METROPOLITAN CONVOY CORPORATION, Plaintiff Below, Appellant, v. CHRYSLER CORPORATION, Defendant Below, Appellee.

(*March* 18,1965)

WOLCOTT, Chief Justice, CAREY, Justice, and STIFTEL, Judge, sitting.

*ERNEST S. WILSON, JR.,* and *WILLIAM T. LYNAM, III,* of Wilson & Lynam, for appellant.

*RICHARD F. Corroon,* of Berl, Potter & Anderson, for appellee.

Supreme Court of the State of Delaware, No. 8, 1964.

WOLCOTT, Chief Justice.

This is an appeal from the direction of a verdict for the defendant, Chrysler Corporation (Chrysler).

The plaintiff, Metropolitan Convoy Corporation (Metropolitan), is a common carrier subject to the Motor Carrier Act of 1935. Prior to 1957 Metropolitan had hauled Chrysler automobiles from Detroit and Buffalo. Metropolitan's I.C.C. rights from Detroit were limited to the months during which Lake Erie was closed to navigation. When Lake Erie was ice-free Metropolitan picked up Chrysler automobiles at Buffalo shipped form Detroit by lake freighter.

In 1956 Chrysler planned to convert its tank plant at Newark, Delaware to an automobile assembly plant. When this became known Metropolitan solicited from Chrysler the business of hauling automobiles form the Newark plant.

In early 1956 Chrysler requested six common carriers, including Metropolitan, to apply to the Interstate Commerce Commission (I.C.C.) for certificates to haul from Newark. Upon reexamination of the requirements of the Newark plant, Chrysler determined that only four carriers were required. The six applications were therefore withdrawn and four carriers, among them Metropolitan, refiled their applications

with the support of Chrysler, which urged upon the I.C.C. the granting of such certificates.

At the hearing before the I.C.C. Chrysler's Chief Traffic Officer testified in support of Metropolitan's application stating that Chrysler would prepay all freight charges and would "control the selection of the carriers to perform the service and routing of the traffic."

Following the issuance of the certificate to Metropolitan, Metropolitan acquired a new site for terminal facilities, it having previously acquired a site for terminal facilities before its application to the I.C.C. but which site proved to be unsuitable.

In early May, 1957, Chrysler tendered a first shipment of new automobiles to Metropolitan for haulage from its Newark plant. Thereafter, Chrysler determined that only two carriers were required for its delivery purposes from its Newark plant and, in June, 1957, advised Metropolitan that it was not a retained carrier and would be given no further business after September, 1957.

Metropolitan sued Chrysler for damages.

As a common carrier holding a certificate as such from the I.C.C., Metropolitan was required to accept for shipment any goods offered to it by any shipper, and had no right under the law to require a shipper to use its facilities. This is by reason of Sec. 309 (a) (1) of the Motor Carrier Act prohibiting any carrier from being a contract carrier unless it has an I.C.C. permit to engage in the contract carrier business. Metropolitan did not have such a permit and, thus, does not claim damages for breach of contract with Chrysler to transport its products.

Metropolitan accordingly bases its cause of action upon the doctrine of promissory estoppel, and seeks in effect restitution of its out-of-pocket expenses attendant upon its location of terminal facilities in Newark. The Restatement of Contracts states the doctrine as follows:

"Sec. 90. Promise Reasonably Inducing Definite and Substantial Action.

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise."

A cause of action based upon the relatively new doctrine of promissory estoppel has two fundamental elements, both of which the plaintiff must prove. Initially, of course, is the necessity that there actually be a promise and, secondly, that the plaintiff in reliance upon that promise took action to his detriment. This court has recognized the doctrine in *Chrysler v. Quimby,* 1 Storey 264, 51 Del. 264, 144 A.2d 123, when we found that the plaintiff in that case, in reliance upon a promise, had been induced to take action to his detriment.

The court below directed a verdict for the defendant for the reason that, in his opinion, the plaintiff had failed to prove the existence of a real promise from Chrysler to Metropolitan that it would cause Metropolitan to be one of the carriers shipping its cars from the Newark plant. The question before us, therefore, is whether or not there was evidence which created an issue of fact to be determined by the jury as to the existnece of such a promise.

Metropolitan relies upon the statement made by Chrysler's Traffic Officer to the I.C.C. in support of Metropolitan's application for a certificate for shipping from Newark, and the testimony of two of Metropolitan's officers concerning inducements allegedly made by Chrysler to them which led to their locating a terminal in Newark, Delaware.

We have read the testimony relied upon by Metropolitan and are of the opinion that it falls short of establishing a real promise on the part of Chrysler upon which Metropolitan was entitled to rely. The

testimony in substance is merely that, under the circumstances, Metropolitan expected and assumed that it would continue to receive approximately one-fourth of the shipments of Chrysler cars from the Newark plant. We find nothing in the record which substantiates the contention that Chrysler's officers definitely assured or promised Metropolitan that it would continue to receive a portion of Chrysler's shipments.

The failure to prove a real promise is fatal to Metropolitan's case for the doctrine of promissory estoppel can never operate unless a real promise is in existence. 1A Corbin on Contracts, Sec. 201.

There being therefore a fatal deficiency in Metropolitan's proof, we affirm the judgment below.