**Pierre DE BOURGKNECHT, Plaintiff,**

v.

**Vincent A. CIANCI, Jr., as Mayor of the City of Providence, Stephen T. Napolitano, in his Capacity as Treasurer of the City of Providence, Defendants.**

Civ. A. No. 92–0447–T.

United States District Court, D. Rhode Island.

March 1, 1994.

**1058**

Michael P. Duffy, Peabody & Arnold, Providence, RI, for plaintiff.

Kevin F. McHugh, Robbio & Nottie, Ltd., Providence, RI, for defendants.

### ORDER

TORRES, District Judge.

The Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on January 18, 1994 is accepted pursuant to Title 28, United States Code, Section 636(b)(1)(B).

The Defendant's Motion for Partial Summary Judgment is granted as to Count I ¶¶ 13(a), (b) and (c) and denied as to Counts IV, V and VI.

### REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

The matter presently before the Court for judicial review is the defendants' motion for partial summary judgment pursuant to F.R.Civ.P. 56(c) on Count I ¶¶ 13(a), (b) and (c) and Counts IV through VI of the plaintiff's complaint. At oral argument, defendants suggested that summary judgment as to Count II would also be appropriate if their motion as to Count I was granted. Because there is no formal motion before the court concerning Count II, no determination as to that count will be made.

Plaintiff, Pierre de Bourgknecht, brought suit against defendants over the claimed nonrenewal or failed execution of a lease agreement. In Count I ¶¶ 13(a), (b) and (c), plaintiff requests a judgment declaring that the lease had been renewed. Count IV alleges that the defendants breached a promise to execute a new lease. Count V alleges misrepresentation, and Count VI seeks the issuance of a mandamus compelling defendant,

Mayor Vincent A. Cianci, Jr., to sign a lease agreement.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c)(2). For the following reasons, I recommend the defendant's motion for summary judgment be granted as to Count I ¶¶ 13(a), (b) and (c) and denied as to Counts IV through VI of the plaintiff's complaint.

## Facts

On or about March 30, 1984, the City of Providence ("the City") entered into a lease ("the original lease") for the Old Providence Journal Building, located at 60 Eddy Street, Providence, Rhode Island ("the premises"), with the then owners, Joseph Mollicone ("Mollicone") and Joseph Cerilli ("Cerilli"). The lease was for a five year term, beginning August 1, 1984 and running through July 31, 1989, and contained an option to renew for a further term of five years. Under this renewal clause, if the City did not wish to renew the lease, it had to give the lessors notice of that fact not less than six months prior to the expiration of the original five year term.

On or about January 20, 1989, Merlin DeConti ("DeConti"), Director of the Department of Inspection and Standards for the City, which was then located in the premises, sent Cerilli a letter stating that the City did not wish to renew the lease. Subsequently, Joseph Paolino, Mayor of the City from 1984 to 1991 ("Mayor Paolino"), DeConti and other representatives of the City commenced negotiations with Cerilli and Mollicone concerning the conditions under which the City would renew the lease.

On April 14, 1989, plaintiff entered into a purchase and sale agreement for the premises and indicated to Cerilli and Mollicone that purchase of the building was contingent upon their delivery of signed leases from a specified list of tenants, including the City. The City was unaware of the purchase and sale agreement, and plaintiff was unaware of DeConti's January 20, 1989 letter.

On or about June 28, 1989, DeConti prepared and submitted to Cerilli a list of 24 conditions he would require as part of any agreement to renew the original lease. Mayor Paolino was aware of the nature of the changes DeConti wanted, knew that they would make any new lease more favorable to the City if adopted and considered them a prerequisite to any renewal of the lease.

The closing for plaintiff's purchase of the premises occurred on August 9, 1989. When it became apparent that Cerilli and Mollicone were unable to deliver a signed lease from the City, plaintiff refused to go forward with the sale without assurance from the City that it would renew its lease in the premises. On that same day, Cerilli called Mayor Paolino, informed him for the first time of the impending sale and indicated that the bank involved in the sale wanted some assurance that the City would renew the original lease.

In response to the phone call Mayor Paolino wrote and caused to be delivered the following letter to the plaintiff on August 9, 1989:

This letter confirms that the City of Providence now a tenant in the Old Providence Journal Building, intends to execute and deliver to you a new lease for the premises now held by the City in or within the next thirty (30) days, or on a mutually agreed upon date. The lease shall be for a term commencing as of August 1, 1989, or upon a mutually agreed upon date, and shall be on terms which will be negotiated between the City and you, which will not be materially less favorable to the Lessor than the prior lease for the premises. This letter may be relied upon by you in connection with your decision to purchase the Old Providence Journal Building.

(Letter from Paolino to de Bourgknecht of 8/9/89.)

The closing was completed on August 9, 1989, and the City remained a tenant at the premises, continuing to negotiate the terms of a new lease with the plaintiff's attorneys. On August 31, 1989, DeConti, believing the City had come to an agreement with plaintiff on a new lease, sent a letter to the City's Board of Contract and Supply, submitting a proposed Lease Renewal and Amendment

Agreement. On September 18, 1989, the Board of Contract and Supply approved the Lease Renewal and Amendment Agreement. Thereafter, when plaintiff was presented with the Lease Renewal and Amendment Agreement he refused to execute it because it contained terms which were materially less favorable to him than the original lease. Negotiations continued and sometime in late 1990 the parties agreed to terms of a new lease. It is unclear whether a new lease was drafted, but nevertheless no new lease was signed by the City.

The City's Department of Inspection and Standards continued to occupy a portion of the City's space until it vacated in December, 1991. The City's Law Department occupied the remainder of the space until it vacated the premises in March, 1993. The City has paid no rent on the premises since December, 1991.

### Discussion

#### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.*, 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing F.R.Civ.P. 56(e)); *see Goldman*, 985 F.2d at 1116; *Lawrence*, 980 F.2d at 68; *Garside*, 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman*, 985 F.2d at 1116 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510).

*II. Count I, ¶¶ 13(a), (b) and (c)—Declaratory Judgment*

Defendants' motion for summary judgment should be granted as to Count I, ¶¶ 13(a), (b) and (c). Those paragraphs of plaintiff's complaint state that the plaintiff is entitled to a judgment declaring that the original lease was renewed for an additional term of five years. Plaintiff points to two bases in support of this contention; both are without merit.

■ First, plaintiff alleges in his complaint that the Board of Contract and Supply approved a "Lease Renewal and Amendment Agreement" on or about September 18, 1989 which extended the lease for an additional five years. (Complaint ¶ 8.) This fact is undisputed. The plaintiff further alleges that both "parties agreed on all terms to be included in the 'Lease Renewal and Amendment Agreement....'" *Id.* This allegation is perplexing because plaintiff states that DeConti never spoke with plaintiff about the terms of the lease renewal agreement before he submitted it to the Board of Contract and Supply and both parties agree that plaintiff refused to execute the agreement after the Board approved it. (Pl.'s Mem. in Opp. to Defs.' Mot. for Partial Summ.J. at 3–4.); (Defs.' Mem. in Supp. of their Mot. for Partial Summ.J. at 4.) Thus, it would appear that the parties did not agree to the "Lease Renewal and Amendment Agreement," and thus, it provides no basis for holding that the original lease was renewed.

■ Second, plaintiff argues that the original lease was renewed pursuant to the terms of the renewal clause found therein. This argument is similarly without merit. In *Mahon v. Director of Public Works for R.I.*, 98 R.I. 426, 204 A.2d 197 (1964), the Rhode Island Supreme Court concluded the applicable rule regarding enforcement of lease renewal terms was that "where the option to renew contained neither an agreed rental for the new term, nor a method to determine such rent if the parties could not agree, an option to renew was unenforceable." *Id.* at 429, 204 A.2d at 198 (citing *Vartabedian v. Peerless Wrench Co.*, 46 R.I. 472, 129 A. 239 (1925)). The renewal clause in *Mahon* created an option to renew for an additional five years and stated:

Said Lessor further [sic] covenants with the said Lessee that if the said Lessee shall desire to lease the said premises for the term of five years from the expiration of the term hereby granted, and shall give notice of such desire in writing sixty days prior to the expiration of the term of this lease, and shall observe and perform all the provisions of this lease by the said Lessee to be observed and performed; the said Lessor agrees to execute a further lease of the said premises for the term of five years, upon the terms and conditions herein set forth, except that the rent payable during such renewal shall be such amount as the Lessor shall demand, and in the event that the Lessee is unwilling to pay the rent demanded by the Lessor, this option for renewal is void.

*Mahon v. Director of P.W. for R.I.*, 98 R.I. at 427, 204 A.2d at 198. The court held that "[n]either an agreed rental nor a means for fixing the same is contained within the instant option ...," making it unenforceable *Id.* at 429, 204 A.2d at 198.

The renewal clause at issue in the present case states:

The Lessee shall have an option to renew said lease for a period of five (5) years at an annual rental to be negotiated by the parties and approved by the Board of Contract and Supply in accordance with the City Charter. If the Lessee shall not exercise the option, it shall notify the Lessor not less than six (6) months in advance of the expiration of the original 5 year term.

(Paolino Depo., Exhibit 1.) Clearly, this clause contains neither an agreed rental for the new term, nor a method to determine such rent if the parties could not agree. Therefore, it is unenforceable and also provides no basis for renewal of the original lease.

Plaintiff contends that both *Mahon v. Director of Public Works for R.I.*, 98 R.I. 426, 204 A.2d 197, and *Vartabedian v. Peerless Wrench Co.*, 46 R.I. 472, 129 A. 239, are distinguishable from the present case, because they "involved instances where a renewal clause made no provision for fixing the

amount of rent on renewal *and the parties themselves were unable to agree.* (Pl.'s Supplemental Mem. in Opp. to Defs.' Mot. for Partial Summ.J. at 2.) This contention is debatable at best but even if true, provides no assistance to Plaintiff.

In furtherance of his argument above, plaintiff states that "[i]n this case, there was no such disagreement. The parties agreed on the amount of the rent and the rent was approved by the Board of Contract and Supply." *Id.* at 2. Plaintiff points to no evidence in support of this assertion. Without more, plaintiff's claim amounts to a mere allegation which is not enough to present a genuine issue of fact necessary to successfully oppose the defendants' motion. *Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514.

As an alternative to his argument that the original lease was renewed for an additional period of five years, plaintiff argues that the original lease was renewed by operation of law on a year to year basis when the city remained in possession of the premises beyond the original term. The defendants counter that once the original lease terminated and the city held over it became a month to month tenant. Plaintiff urges that it is not necessary to decide the term of the tenancy that resulted when the city held over in order to deny the defendants' motion. This is simply not the case. The plaintiff has restricted the court's analysis to a determination of whether the original lease was renewed for an additional five years by his own language in pleading Count I ¶¶ 13(a), (b) and (c). Those paragraphs request a judgment specifically declaring that the lease was renewed for a period of five years. Any dispute as to the city's status as a tenant from year to year or month to month is immaterial to a determination of the city's alleged renewal of the original lease for a period of five years. Therefore, while determination of the city's status as a holdover tenant may certainly be related to the circumstances underlying this case if properly raised, it is irrelevant in the context of defendants' motion for summary judgment. Consequently, defendants' motion for summary

judgment on Count I ¶¶ 13(a), (b) and (c) should be granted.

## III. Count IV—Promissory Estoppel

■ The defendants motion for summary judgment on Count IV should be denied. That count alleges that Mayor Paolino promised on behalf of the City that it would execute a new lease for the premises and that that promise should be enforced through promissory estoppel. (Complaint ¶ 19.) The doctrine of promissory estoppel provides:

> A promise which the promisor should reasonably expect to induce action of forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. 1 Restatement (Second) *Contracts* § 90 at 242 (1981).

*B.M.L. Corp. v. Greater Providence Deposit Corp.,* 495 A.2d 675 (R.I.1985).

The defendants point out that "[t]he terms of the promise must be certain, for there can be no promissory estoppel without a real promise," *id.* at 677, and argue that under *B.M.L. Corp. v. Greater Providence Deposit, id.,* the promise at issue in this case is too uncertain for the application of promissory estoppel.

The present case is distinguishable from *B.M.L. Corp. v. Greater Providence Deposit, id.* In *B.M.L.,* the plaintiff entered into a purchase and sale agreement to sell the Bristol Motor Lodge to Joseph Roderick ("Roderick"). *Id.* at 676. Roderick's accountant sent the plaintiff a letter directing his attention to a second enclosed letter a Greater Providence Deposit Corporation ("GPDC") vice president had previously sent to Roderick. The GPDC letter stated:

> This letter is to inform you that arrangements have been made to finance the purchase of . . . the Bristol Motor Lodge.
>
> Although final term and conditions have yet to be finalized, said financing will take the form of a $350,000 SBA guaranteed loan from [GPDC], subject to a $650,000 first mortgage with another lending insti-

tution.... Final details are presently being arranged between lending institutions and the Small Business Administration...."

*Id.* at 676–677. The court stated "[p]romissory estoppel cannot be based upon preliminary negotiations and discussions or on an agreement to negotiate the terms of a contract," *Id.* at 677, and found that the letter did not constitute a certain enough promise to invoke promissory estoppel for a number of reasons. First, the letter expressly conditioned the financing upon the approval of another lending institution and the Small Business Administration. Second, it contained no terms relating to rates of interest or requirements for the SBA guarantee mentioned in the letter. *Id.* at 677–678.

In the present case, the promise sought to be enforced is different than the letter found in *B.M.L.* In his letter to plaintiff on August 9, 1989, Mayor Paolino stated that the lease the city intended to execute with plaintiff will not be materially less favorable to him than the prior lease. (Letter from Paolino to de Bourgknecht of 8/9/89.) This promise is not open ended without sufficient detail, nor is it conditioned on the approval of another party, like the one in *B.M.L.* Mayor Paolino's promise does not leave the terms and details of the agreement wide open to any interpretation. Here, Mayor Paolino promised the City would negotiate and execute a lease, the terms of which would preserve the status quo under the original lease. The terms of the original lease specifically delineate the extent to which the new terms may be negotiated. Clearly, any new terms may not greatly differ from the original lease, because Mayor Paolino stated they would not be materially less favorable to the plaintiff than the original lease. Thus, Mayor Paolino's promise is certain enough for application of the doctrine of promissory estoppel.

■ The Defendants further assert that Mayor Paolino could not have reasonably expected that the letter would have induced plaintiff to purchase the building and that it is "inconceivable" that plaintiff was so induced by the letter. The defendants point to the facts that the city leased only the basement floor of the six story building, implying

that the City's lease was of little consequence, and that the Board of Contract and Supply and not Mayor Paolino has authority to bring the city into a lease under Providence Code of Ordinances § 21–31.1. These facts provide the defendants' arguments with little support and are genuinely disputed by plaintiff.

Providence Code of Ordinances § 21–31.1 does not apply to the present case. That section states:

It shall be the duty of the Director of the Department of Public Property to request the Board of Contract and Supply that an advertisement be placed in the newspaper, upon receipt of a communication from any city department requiring to lease property not owned by the City of Providence.

The specifications shall incorporate the area of space to be leased, shall be publicly opened by the Board of Contract and Supply and awarded to the low bidder meeting specifications and requirements.

No contract for the leasing of property by the City of Providence shall be entered into except in accordance with this section.

Providence Code of Ordinances § 21–31.1.

Here, no communication from any City department is alleged to have been issued to the Director of the Department of Public Property regarding the lease of property. Moreover, § 21–31.1 appears to apply to situations when a City department is searching for new space to lease and move into, making the acceptance of bids an appropriate measure. The City's Department of Building and Inspections and Law Department were already tenants in the premises and were considering renewing their lease. It would seem illogical for the City to have to follow the advertisement and bid process found in § 21–31.1 each time one of its departments negotiated for the renewal of its lease on space it wished to remain in. Further, as chief executive officer of the City, it is reasonable for Mayor Paolino to make the promise he did and for plaintiff to rely on it in the belief that the Mayor had the authority to do so.

As further evidence that Mayor Paolino should have reasonably expected that plain-

tiff was in fact induced by his promise, plaintiff points out that Mayor Paolino assured him in the letter: "This letter may be relied upon by you in connecting with your decision to purchase the Old Providence Journal Building." (Letter from Paolino to de Bourgknecht of 8/9/89.) Further, plaintiff testified at his deposition that he informed Cerilli at the closing on August 9, 1989 that he would not purchase the building without a signed commitment from the Mayor concerning the lease. (de Bourgknecht Depo. at 17–18.) Both of these facts tend to demonstrate that the City's lease was of consequence to the plaintiff's purchase of the building and that Mayor Paolino intended plaintiff to rely on his letter in that purchase. Thus, a genuine dispute regarding plaintiff's reliance on the letter and whether Mayor Paolino should have reasonably expected that reliance is created and should properly be resolved at trial.

■ The Defendants lastly argue that they are entitled to summary judgment on Count IV because Rhode Island's statute of frauds bars this action. Rhode Island General Laws § 9–1–4 states in pertinent part:

9–1–4. Statute of Frauds—No action shall be brought:

(1) Whereby to charge any person upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer time than one (1) year;

unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized.

R.I.Gen.Laws § 9–1–4. The defendants argue that there was no written lease continuing their obligations after the original lease expired. What this argument fails to perceive is that the promise plaintiff seeks to enforce is not a lease but the City's promise by Mayor Paolino that it would negotiate and execute a lease with terms not materially less favorable to the plaintiff than those of the prior lease. This promise is memorialized in Mayor Paolino's August 9, 1989 letter to

plaintiff and as stated above is defined by the written terms of the original lease. Therefore, the promise that plaintiff seeks to enforce is within the requirements of the statute of frauds. Consequently, the defendants' motion for summary judgment in Count IV should be denied.

*IV. Count V—Misrepresentation*

■ The defendants' motion for summary judgment on Count V should also be denied. Count V alleges that the statements made by Mayor Paolino in his August 9, 1989 letter to plaintiff constituted misrepresentations intentionally or negligently made. To prevail on a claim of intentional misrepresentation under Rhode Island law, a plaintiff must prove the defendant, "in making the statement at issue, knew it to be false and intended to deceive, thereby inducing plaintiff to rely on the statements to his detriment." *Katz v. Prete*, 459 A.2d 81, 84 (R.I.1983).

Plaintiff has raised a genuine issue of material fact as to each of these elements. Plaintiff argues that Mayor Paolino's statement in the letter, that the City intended to negotiate a lease with plaintiff that was not materially less favorable to him than the original lease, was false and the Mayor knew it to be so. As evidence of this, plaintiff points to Mayor Paolino's own deposition testimony in which he states that the City would not execute a new lease for the premises unless it incorporated the changes that DeConti sought, and that prior to writing the letter, Mayor Paolino knew those changes were more favorable to the city than the terms of the original lease. (Paolino Depo. at 17–18 and 21.) Thus, whether Mayor Paolino knew before writing the letter that the City would not negotiate a lease that would retain the status quo of the original lease is an issue in genuine dispute and should be resolved at trial.

In regards to whether Mayor Paolino intended to deceive plaintiff thereby inducing plaintiff to rely on his statements, the above analysis of plaintiff's reliance on the letter in the context of Count IV is similarly applicable here. The letter Mayor Paolino wrote to plaintiff states "[t]his letter may be relied upon by you in connecting with your decision

to purchase the Old Providence Journal Building." (Letter from Paolino to de Bourgknecht of 8/9/89.) It is difficult to accept defendants' contention that Mayor Paolino never intended to induce the plaintiff to act upon his statements when he closes his letter by instructing plaintiff to rely on the statements therein. Further, plaintiff testified at his deposition that he informed Cerilli at the closing on August 9, 1989 that he would not purchase the building without a signed commitment from the Mayor concerning the lease and that Cerilli contacted Mayor Paolino directly thereafter to obtain such commitment. (de Bourgknecht Depo. at 17–18.) In light of these facts, the issue of Mayor Paolino's intent to deceive thereby inducing plaintiff to act in reliance on his statements is best left for trial.

Finally, there appears to be no dispute between the parties that the Law Department of the City occupied the premises through March, 1993, but paid no rent after December, 1991. The question of whether plaintiff suffered this detriment as a result of Mayor Paolino's alleged misrepresentations is one of fact, and therefore is also best left for trial.

■ Defendant is also not entitled to summary judgment on plaintiff's claim of negligent misrepresentation. In *Estate of Braswell v. People's Credit Union*, 602 A.2d 510 (R.I.1992), the Rhode Island Supreme Court recognized the tort of negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552. That section states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977). The City concedes that Mayor Paolino was acting in his capacity as Mayor when making the statements at issue. Thus, it would appear they were made in the course of his profession. Further, the falseness of the statements, Mayor Paolino's lack of reasonable care in communicating them and the reasonableness of plaintiff's reliance on them are all subject to the same genuine disputes of fact that prevent summary judgment on plaintiff's intentional misrepresentation claim. Consequently, the defendants are not entitled to judgment on Count V, and their motion thereon should be denied.

*V. Count VI—Mandamus*

The defendants' motion for summary judgment on Count VI should be denied as the factual issues necessary to its determination would be best left to trial. That count requests this Court to issue a mandamus compelling the current Mayor of the City, Vincent A. Cianci, Jr., to execute a renewal agreement. Plaintiff cites to *Providence & Worcester Co. v. Blue Ribbon Beef Co., Inc.*, 463 A.2d 1313 (R.I.1983), for the proposition that when the essential terms of a transaction are approved by the appropriate legislative authority, execution by the Mayor is a ministerial duty which could not lawfully be withheld and can be compelled by mandamus. *Id.*

Plaintiff claims that the "essential terms" of the lease agreed to by the parties in 1990 were the same as those under the Lease Renewal and Amendment Agreement approved by the Board of Contract and Supply in 1989. Provisions of the 1989 Lease Renewal and Amendment Agreement requiring extra work by the lessor could be deleted without affecting the City, because the work was already done. The rent was the same in both agreements and plaintiff had agreed in 1990 to the City's request that he assume responsibility for janitorial services and maintenance of the wiring, plumbing, heating and air conditioning systems.

The defendants did not specifically address Count VI in their written or oral arguments other that to state it must fail because the other counts at issue in this motion also fail and because there is no legally binding lease in effect. Because plaintiff raises issues appropriate for a factfinder to determine and the defendants' argument is no more than a conclusion with no legal or factual support,

the defendants' motion for summary judgment on Count VI should also be denied.

*Conclusion*

For the reasons stated above I recommend that defendant's motion for partial summary judgment be granted as to Count I, ¶¶ 13(a), (b) and (c) and denied as to Counts IV, V and VI.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[1] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[2]

---

**1.** Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

**2.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).