DECISION
Before the Court is a Petition to Confirm Ownership of Assets filed by United Textile Machinery Corp. ("United"). Tyler Finance, L.P. ("Tyler") and the Receiver of The Worcester Company, Inc. ("Worcester") have both objected. The pertinent facts are as follows.
 Facts/Travel
Tyler is an Illinois limited partnership with an address at 1560 Sherman Avenue, Evanston, Illinois. Worcester is a corporation duly organized and existing under the laws of the State of Rhode Island, and its usual place of business is 1 Greystone Avenue, North Providence, Rhode Island. United is a dealer in textile machinery and equipment.
Tyler filed the underlying proceeding, a Petition for Appointment of a Receiver, on August 26, 1999. In the Petition, Tyler states that Worcester is indebted to Tyler in an amount exceeding $20,000,000 on account of loans made to Worcester, which are secured by liens and security interests in and to all present and future tangible and intangible property of Worcester. As stated in United's petition, the economics of the Receivership are such that Tyler is the only creditor that will receive any benefit from the proceedings.
Allan M. Shine, Esq. was appointed by the Court as Temporary Receiver of Worcester on August 29, 1999, and subsequently appointed Permanent Receiver on September 15, 1999. On or about June 7, 2000, the Court approved an Agency Agreement between United and the Receiver in which United was to liquidate the machinery and equipment located at Worcester. During the course of the Receivership and the time of the Agency Agreement, negotiations were entered into by United, Tyler and the Receiver as to United possibly purchasing machinery and equipment located at Worcester. The course of those negotiations eventually led to United filing the present Petition to Confirm Ownership of Assets.
In its Petition, United argues that on or about September 7, 2000 representatives from United, Tyler and the Receiver negotiated the purchase of Worcester's machinery and equipment during a telephone conversation in which terms were discussed and agreed to. United claims that if Tyler "had not unilaterally repudiated the agreement to sell the machinery and equipment, it would have been a mere formality for the Receiver to have obtained permission from the Court to consummate the sale. . ." As a result of the repudiation, United argues that it "could not sell to third parties the machinery and equipment it bought," and had lost time essential to the performance of the Agency Agreement.
Both Tyler and the Receiver argue that there was never a final agreement to purchase Worcester's machinery and equipment. Instead, they maintain that the September 7th telephone conversation involved only negotiations and that Tyler's representative stated that she would need to obtain approval from Tyler's partners as a condition to the sale. The terms of the telephone conversation, namely the price, were not approved by Tyler's partners, and the sale was never consummated. Tyler and the Receiver also argue that even assuming there was an oral agreement to sell the machinery and equipment, Tyler never had any authority to sell the receivership assets of Worcester, and that the alleged oral agreement falls to satisfy the statute of frauds.
 The Alleged Agreement
The central dispositive issue in the present petition is whether an agreement was reached between the parties to sell Worcester's machinery and equipment, and if there was, whether that agreement is enforceable. In Rhode Island, transactions involving goods are governed by Chapter 2 of the Uniform Commercial Code ("Code") entitled "Sales."[1] Section6A-2-102 of the Code defines the scope of the Chapter and provides:
 "Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which, although in the form of an unconditional contract to sell or present sale, is intended to operate only as a security transaction, nor does this chapter impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers."
"Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of title 6A), and things in action." SeeR.I.G.L. § 6A-2-105.
The formal requirements needed in order to have an enforceable contract or agreement under the Code are found in § 6A-2-201 of the Chapter. The section provides:
 "6A-2-201. Formal Requirements — Statute of frauds. — (1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom is enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received. (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable, (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or (b) If the party against whom the enforcement is sought admits in his or her pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or (c) With respect to goods for which payment has been made and accepted or which have been received and accepted (§§ 6A-2-606)."
In the present case, the parties were negotiating the sale of Worcester's equipment and machinery. It's appraised value was approximately $2,000,000, and the sale price discussed by the parties was approximately $150,000. Therefore, § 6A-2-201 of the Code applies in that the transaction and negotiations in question involved the sale of "goods" in excess of $500.
Although United argues that all material terms (including the purchase price, time for removal and expenses to be paid by United during the removal process) for the purchase of the machinery and equipment were discussed and agreed to in the September 7th telephone conversation, United still must produce "some writing sufficient to indicate that a contract for sale" was made between the parties. United has not produced, and this Court is not aware of any writing that satisfies the requirements provided in § 6A-2-201 (l). No documents have been offered that would indicate a contract was signed and entered into between the parties for the sale of the machinery and equipment. Although offers to purchase the machinery and equipment were drafted, there is nothing in the exhibits or in the record that show any agreement or offers were ever signed by the parties. There is also nothing in the record that shows Court approval for the proposed sale was ever sought or attained in conformance with previous Court Orders. Furthermore, although there are allegations that Tyler's representative declared "you have a deal" during the September 7th telephone conversation, that does not negate the fact that the deal may have been conditional upon further approval from Tyler's partners, or the fact that there is not a writing that satisfies the Statute of Frauds. Without more, merely stating "you have a deal" does not satisfy the Statute of Frauds. Therefore, the alleged oral agreement between the parties for the sale of the goods is unenforceable unless one of the exceptions provided for in 6A-2-201 (c) apply.
No writing has been offered that would show any confirmation of a contract so subsection (2) does not apply. The machinery and equipment in question were not "specially manufactured" for United so subsection (3)(a) does not apply. In regard to subsection (3)(b), although United maintains an agreement was reached, Tyler and the Receiver have never admitted that a final agreement was ever reached encompassing all the aspects of the sale. In fact, affidavits have been filed by the representatives of the Receiver and Tyler involved in the September 7th telephone conversation that state any agreement for the sale of the machinery and equipment for $150,000 was conditional upon the approval of Tyler's partners. Therefore, the provisions of subsection (3)(b) do not apply. Finally, subsection (3)(c) states that an oral contract is valid with respect to goods for which payment has been made and accepted. Although a check for $25,000 was deposited into an interest-bearing escrow account, the purpose of that money was only evidence of United's good faith in further negotiating the purchase of the machinery and equipment.[2] Therefore, the exception found in subsection (3)(c) also does not apply.
As the facts of the case indicate, United, Tyler and the Receiver disagree as to whether a final enforceable agreement to purchase the machinery and equipment was entered into as a result of their negotiations. Tyler and the Receiver maintain that any agreement was conditional upon the approval of Tyler's partners, while United declares that the September 7th telephone conversation produced a final agreement. The Statute of Frauds provided in § 6A-2-201 mandates that an agreement such as the one indicated by United must be in writing in order for it to be enforceable. Here, there is no writing sufficient to indicate the existence of a contract, nor do any of the exceptions found in § 6A-2-201 apply. Furthermore, there is no evidence of conduct by both parties that would indicate the existence of a contract. See ScottBrass, Inc. v. C C Metal Products Corp., 473 F. Supp. 1124 (D. R.I. 1979).
Finally, United also argues that the doctrine of promissory estoppel applies to the present case in that the "promise to sell made by the Receiver caused United to forbear from liquidating and scraping the machinery and equipment." Although there may have been negotiations that led United to believe an agreement was or would be reached, in order for promissory estoppel to apply, there must be a "clear and unambiguous promise that would "reasonably induce forbearance." See B.M.L. Corp. v. Greater Providence Deposit Corp., 495 A.2d 675 (R.I. 1985) (stating that the first element of promissory estoppel is the existence of a clear and unambiguous promise, and that "[p]romissory estoppel cannot be based upon preliminary negotiations and discussions or on an agreement to negotiate the terms of a contract."); see also DeBourgknecht v. Cianci,846 F. Supp. 1057, 1062-63 (D. R.I. 1994). Although there are allegations that Tyler's representative made a promise to sell the machinery and equipment, or that Tyler's representative stated "you have a deal," any "deal" or agreement was still subject to documentation that was never executed and signed. Consequently, this Court finds that there is insufficient evidence in the record to support a finding that a contract existed under the doctrine of promissory estoppel.
Therefore, for the reasons stated above, United's Petition to Confirm Ownership of Assets is denied.[3]
Counsel shall submit the appropriate judgment for entry.
[1] See R.I.G.L § 6A-2-l0l, et. seq.
[2] The letter from the Receiver to United dated September 8, 2000, one day after the telephone conversation, states that the Receiver rejects United's counteroffer and withdraws its offer to sell assets according to terms set forth in the draft Order. The letter also points out that the Receiver "is willing to continue discussions regarding the sale" contingent upon the deposit of $25,000 into escrow. Furthermore, the response letter from United's attorney dated September 11, 2000 states: "Enclosed herewith please find my client's check for the sum of Twenty-five Thousand Dollars ($25,000) .which the Receiver requested as evidence of my client's good faith negotiations in connection with the purchase of the assets in question."
[3] This Court merely holds that any alleged agreement between the parties is unenforceable in that it does not satisfy the requirements of the Statute of Frauds as provided in R.I.G.L. § 6A-2-201, and that the doctrine of promissory estoppel is inapplicable for the purposes of the present petition. This Court does not make any findings as to the liability, if at all, of any of the parties involved in the underlying Receivership proceedings.