**SAUNDERS REAL ESTATE CORPORATION, Agent for Boston Development Company Limited Partnership–I State**

v.

**Joel D. LANDRY et al.**

**No. 99–447–Appeal.**

Supreme Court of Rhode Island.

April 27, 2001.

Samuel D. Zurier, Richard A. Licht, Providence, for Plaintiff.

Joel D. Landry, Thomas F. Connors, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendants, Joel D. Landry and Thomas Connors (collectively, defendants), have appealed from the entry of a partial summary judgment and subsequent award of damages in favor of the plaintiff, Saunders Real Estate Corporation. This case came before the Supreme Court for oral argument on April 3, 2001, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After hearing the parties' arguments and examining their memoranda, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided summarily.

The facts of this case are essentially undisputed. In January 1991, defendants leased from plaintiff a law office suite located at One State Street in Providence, Rhode Island. The commercial lease was signed by defendants as tenants "jointly and severally" and as "Guarantors of Tenant[s'] Obligation." The initial lease term was for fifty-six calendar months, terminating on August 31, 1995. The lease contained a provision for the "Extension of Lease Term," pursuant to which the lease was renewed automatically for additional successive periods of five years. The lease also provided that if defendants elected not to extend, they were required to give writ-

ten notice six months before the expiration of the original term. In turn, plaintiff was required to notify defendants in writing of a cancellation of the right of extension within the same time periods, unless defendants were in default of their obligations, in which case plaintiff could notify defendants at any time before the end of the lease term. The rental amount was set at a monthly minimum that increased from $2,417 to $3,625 over the initial term of the lease and could be further increased by the Consumer Price Index. In addition, defendants were responsible for a $423 "Monthly Electric Charge" subject to an increase by plaintiff, a share of plaintiff's real estate taxes, and a portion of plaintiff's increase in operating costs. In the event that defendants did not pay their rent or other charges in a timely manner, plaintiff had the "right to give defendants a written notice to quit or vacate the [p]remises," five days after which the lease terminated.

The defendants regularly made late payments, and on some of these occasions, plaintiff sent notices of default; defendants always paid the delinquent rent and continued to occupy the premises. In August 1995, the last month of their initial lease term, defendants vacated the premises without having given a written notice of their election not to renew the lease. In November 1995, plaintiff informed defendants that the original term of the lease was automatically extended for an additional five years, that defendants now owed $22,966.60, and that failure to pay within five business days would cause plaintiff to exercise its rights under the lease. The defendants made no further payments for any amounts accrued under the lease after August 1, 1995. According to testimony by Brian Marsden (Marsden), plaintiff's director of leasing, plaintiff made immediate efforts to obtain a replacement tenant, but the property remained vacant for ten months. The plaintiff eventually negotiated a lease agreement for the premises with Merit Capital Associates for a three-year term, commencing July 1, 1996, with monthly minimum rents ranging from $1,200 to $2,658.

In December 1995, plaintiff filed an action for breach of contract and guaranty in Superior Court. Based on the undisputed fact that defendants had failed to provide a required written notice of their intent not to renew, plaintiff's motion for partial summary judgment on the breach of contract and on the guaranty was granted in September 1997, reserving only the issue of damages for further proceedings. Following a trial before a different Superior Court justice, judgment was entered for plaintiff in June 1999, ordering defendants to pay a total of $178,309 for damages, prejudgment interest, and attorney's fees. The defendants filed the instant appeal, contending that the automatic renewal clause of the lease was unenforceable because it did not specify the exact rental amount for the new term or contain a method to determine such rent if the parties could not agree, or in the alternative, the clause did not apply because tardy rental payments placed defendants into default that terminated the lease and resulted in a month-to-month tenancy. The defendants also suggested that the terms of the lease were sufficiently onerous as to violate public policy and that, therefore, the lease was void *ab initio,* and that damages were assessed incorrectly.

### Summary Judgment

"This Court reviews the granting of a motion for summary judgment on a *de novo* basis, applying the same criteria as the trial court. * * * Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material

fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Carlson v. Town of Smithfield,* 723 A.2d 1129, 1131 (R.I.1999) (per curiam).

■ We note at the outset that although the lease in this case referred to an "Extension of Lease Term" under which all the conditions of the original lease for an additional term are continued, the lease section at issue was a renewal clause because it allowed for an upward adjustment of rent. *Vartabedian v. Peerless Wrench Co.,* 46 R.I. 472, 474, 129 A. 239, 240 (1925). This Court has held a renewal clause that left the renewal rental to be fixed by future agreement between the parties void for uncertainty and indefiniteness when "[n]o method was provided in the lease for the determination of the rent if the parties could not agree upon the amount." *Id.See also De Bourgknecht v. Cianci,* 846 F.Supp. 1057, 1061 (D.R.I. 1994) (stating that a renewal clause for "annual rental to be negotiated by the parties" was unenforceable); *Mahon v. Director of Public Works for the State of Rhode Island,* 98 R.I. 426, 427, 429, 204 A.2d 197, 198 (1964) (holding that the renewal clause was unenforceable when the new rent was determined solely by lessor, and the option was voided by the lessee's unwillingness to pay the demanded amount).

■ The renewal clause at issue in the instant case stated:

"(b) For any extended term of the lease, the Tenant shall pay a monthly rent which shall be the fair market rental value for the Premises as of the date of the commencement of such additional five (5) year period(s) as determined solely by the Landlord in its bona fide business judgement and in good faith taking into account all relevant factors bearing upon such rental value for comparable space within the central business district of Providence, Rhode Island, including, without limitation, size of premises, location, and visibility and exposure; however, in no event will the minimum monthly rent be less than the minimum monthly rent in Section 1.2 and as adjusted by Section 3.1."

Thus, the determination of the renewal rent had not been left to agreement by the parties but was the minimum monthly rent set forth in the lease, with the possibility of an upward adjustment limited to that allowed by Section 3.1. Section 1.2 specified four different rental amounts ranging from $2,417 per month for the initial twenty months to $3,625 per month for the last twelve months of the fifty-six month lease. Although the fair market value provision for the extended term of the lease was unenforceable because it was to be "determined solely by the Landlord in its bona fide business judgement"—a standard that we deem too vague and subjective to be enforceable—the minimum rent as agreed to by the parties was sufficiently definite and objectively ascertainable as to be enforceable.

■ The defendants suggested, in the alternative, that the lease was terminated when plaintiff sent defendants default notices for tardy payments of their rent and that, consequently, their lease agreement was converted into a month-to-month tenancy.

We reject this argument, given that Section 13.1 of the lease provided that:

"Upon neglect or refusal of Tenant to pay the Rent due or other charges due for which provision is made herein, on or before the date on which the same becomes due and payable, Landlord shall have the right to give Tenant five (5) days written notice to quit or vacate the

Premises, and said Lease shall terminate at the expiration of five (5) days after sending of said Notice (Notice of Term Termination)."

A thorough review of the record reveals that although defendants were repeatedly late in paying their rent and had received several notices of default, they always eventually tendered their payment and thereby cured the default. Furthermore, defendants admitted that they never received a termination notice—required by Section 13.1 of the lease for proper termination—nor did plaintiff ever commence eviction proceedings. Given these facts, we agree with the trial justice that there was "no suggestion that the landlord provided written notice," and consequently, we hold that based upon the evidence submitted, no material issues of fact remained, and partial summary judgment on the issue of liability was granted appropriately.

■ The defendants also claimed that the terms of the lease were so "onerous that as a matter of public policy [it] should be declared null and void." We note that defendants were experienced attorneys who had agreed to all conditions and abided by the lease terms for almost five years. Moreover, this was not a case in which defendants were forced into a contract of adhesion, offered on a take-it-or-leave-it basis; rather, the leases of individual tenants were the result of initial proposals by plaintiff, subject to negotiation, resulting in different terms for the various tenants.

### Damages

■ Last, defendants maintained that the damages resulting from their breach were assessed incorrectly because plaintiff did not adequately mitigate its damages, and improper comparisons to other building vacancies were made to estimate the full market value of the premises. This Court has held that "the burden of proof rests on the party claiming that another litigant has failed to mitigate damages." *Riley v. St. Germain,* 723 A.2d 1120, 1123 (R.I.1999) (per curiam); *Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury,* 603 A.2d 726, 729 (R.I.1992). Moreover, "[i]t is well settled that the 'findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Foley v. Osborne Court Condominium,* 724 A.2d 436, 439 (R.I. 1999) (quoting *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I.1997)).

■ With respect to the assessment and mitigation of damages, our review of the record indicated that the trial justice did not overlook or misconceive any material evidence. The plaintiff supported its claim for damages resulting from the defendants' breach with testimony detailing the method of calculation and describing the plaintiff's efforts to secure a new tenant for the premises. The record established that the trial justice considered all elements that could contribute to damages under the lease and that he carefully calculated each factor within the respective lease periods. Thus, we conclude that, in light of the evidence submitted, the defendants failed to carry their burden to show that the plaintiff's mitigation efforts were inadequate, and we decline to disturb the trial justice's judgment concerning the damage award.

For the forgoing reasons, the defendants' appeal is denied and dismissed, and we affirm the judgment of the Superior Court, to which the papers in this case may be returned.