371 A.2d 1057.

RICHARD J. FLYNN *et al. vs.* PAUL A. BURKHARDT *et al.*

APRIL 13, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action wherein the plaintiffs seek damages from the defendants for breach of contract for the sale of land. The plaintiffs allege fraud and misrepresentation by the defendants. The defendants filed a counterclaim seeking rescission of the deed and reconveyance of the real estate. The cause was heard before a justice of the Superior Court sitting without a jury. The trial justice rendered a decision for the defendants and from a judgment based thereon, the plaintiffs appeal to this court.

In September 1970, plaintiffs Richard J. Flynn and Frances E. Flynn, husband and wife, were desirous of pur-

chasing from defendants Paul A. Burkhardt and Jane A. Burkhardt, also husband and wife, a certain parcel of land located on Belfield Drive in the town of Johnston. The plaintiff, Frances E. Flynn, contacted defendant, Jane A. Burkhardt, regarding the sale of the land. Thereafter, plaintiffs were contacted by Ernest A. Morin, a real estate agent, acting for defendants relative to the sale of the land. The plaintiffs in company with Morin went to the Johnston Town Hall where they were shown an assessors' plat showing the parcel of land owned by defendants. The parcel is represented on plat 54, lot 14, and within the boundaries of the parcel appears the notation "3-5/10A" which the parties assumed to mean 3½ acres. The plaintiffs and Morin then went to Belfield Drive to view the land. An offer was subsequently made to Morin by plaintiffs to purchase defendants' land.

Thereafter a buy and sell agreement, drafted by Morin, for defendants' parcel of land described as containing approximately 3½ acres and being Lot 14 of assessors' plat 54 was executed by the parties on November 2, 1970, for a purchase price of $8750. On the agreement is a diagram identical to the lot shown on the assessors' plat at the Johnston Town Hall indicating that the parcel contained 3½ acres.

The closing took place on December 14, 1970, when the deed (plaintiffs' exhibit 3) was executed by defendants. The description in the deed made no reference to the assessors' plat but described the parcel as being situated on Belfield Drive and designated as lot 2 on that plat entitled: "Map of the Wm. Smith Estate in Johnston, R. I. by J. A. Latham, Apr. 1897."

The defendants in substance testified that they signed both the buy and sell agreement and the deed but that they had no discussion with plaintiffs as to the amount of land to be purchased and that all the negotiations with

plaintiffs had been carried on by Ernest A. Morin who was acting for defendants. The defendants stated that they had no knowledge of the amount of land involved except that Mr. Morin told them that the town records showed somewhere around 3½ acres. They testified that there was no discussion at the closing as to the amount of land involved in the sale. The defendants stated that when notified by plaintiff Richard J. Flynn that the survey showed less land had been conveyed than agreed upon, they offered to cancel the deal and refund the purchase price but this offer was rejected by plaintiffs who demanded reimbursement for attorneys' fees, title search survey expenses and taxes.

The plaintiffs testified in substance that they relied on the representation by Morin that the parcel contained 3½ acres and also the buy and sell agreement prepared by Morin and the assessors' plat which they had viewed at Johnston Town Hall. They stated that when notified of the discrepancy in the amount of acreage in the land by the surveyor they had engaged, they immediately notified defendants. The plaintiffs agreed that defendants offered to cancel the deed and refund the purchase price but they demanded $1700 or $1800 in expenses which was refused by plaintiffs.

John L. Flock, a land surveyor, testified that in April 1971, he was engaged by plaintiffs to survey the parcel of land on Belfield Drive and divide the land into three parcels. A survey completed by Flock (plaintiffs' exhibit 7) indicated that the parcel of land contained 2.13 acres. Mr. Flock testified that he notified plaintiffs that the lot contained 2.13 acres and was incapable of being divided into three lots as desired by plaintiffs.

Joseph Markel, an officer of Home Owners Title Guarantee Company, testified that his company was engaged to examine the title of the parcel of land on Belfield

Drive and that an abstract was prepared and sent to the attorney then representing plaintiffs. He testified that the deed was prepared by his office, and although he was present at the closing he had no recollection whatsoever of what transpired at the closing. Mr. Markel further testified that a diagram which was attached to the title abstract (defendants' exhibit A) was similar to the diagram on the buy and sell agreement. He stated that the diagram was attached to the abstract for the purpose of showing the purchaser the shape and frame of the parcel being conveyed. He asserted that the title policy does not describe the land by assessors' plat and lot number as used in the buy and sell agreement because such plats are not permanent records and can be changed at the whim of the assessor and that the title policy does not indicate the amount of acreage or guarantee to the purchaser the amount of land being purchased.

The trial justice in his decision reviewed the evidence and stated:

> "Mr. Markel said that he made the survey which was represented by, I believe, plaintiff's exhibit number seven and this exhibit shows the acreage is not three and five tenths acres but two and thirteen hundredths acres."

Noting that Markel could not recall whether he showed the diagram to plaintiffs, the trial justice said:

> "It's possible that he didn't show it to the plaintiff and his attorney, but in all probability, he did. The Court is not convinced that the plaintiff, at the time of the closing, did not know the exact acreage of the property in question."

In his decision the trial justice did not consider the question of whether the buy and sell agreement merged with the deed. However, he found as a fact that plaintiffs knew of the mistake at the closing, and that, therefore, they

waived any right they may have had to rescind the contract. In support of this finding the trial justice stated:

> "Here in plaintiff's exhibit number seven it clearly shows that at the time of the closing the closing agent, Mr. Markel made a drawing which is only two and thirteen hundredths acres."

Accordingly, the trial justice entered judgment for defendants from which plaintiffs have appealed to this court.

The plaintiffs contend that the trial justice in making such findings misconceived the evidence. They point out that plaintiffs' exhibit 7 referred to by the trial justice in his decision is a survey made by Mr. Flock, the land surveyor engaged by plaintiffs several months after the closing to survey and divide the parcel into three lots. The plaintiffs contend that the trial justice misconceived the evidence when he found that plaintiffs knew of the discrepancy at the time of the closing and thereby committed reversible error.

The law is clear that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Raheb* v. *Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976); *Agar Supply Co.* v. *David-Hodosh Co.,* 115 R.I. 80, 340 A.2d 140 (1975); *Fabbri* v. *Regis Forcier, Inc.,* 114 R.I. 207, 330 A.2d 807 (1975). It is also clear that in reviewing findings of a trial justice, it being his job to draw the inferences, his findings will be upheld, whether they be affirmative or negative as long as they are reasonable and logical. *Sullivan* v. *Catholic Cemeteries, Inc.,* 113 R.I. 65, 317 A.2d 430 (1974); *Chase* v. *Blackstone Distrib. Co.,* 110 R.I. 537, 294 A.2d 392 (1972).

We have carefully reviewed the record before us and we conclude that the trial justice misconceived material

evidence when he confused the diagram of the parcel prepared by Home Owners (defendants' exhibit A) with the survey prepared by Mr. Flock (plaintiffs' exhibit 7).

The trial justice found that the parcel diagram was shown to plaintiffs and that since the diagram clearly showed that the parcel contained only 2.13 acres, plaintiffs knew of the parcel size at the time of the closing and therefore, waived any rights they may have had to rescind. Even assuming that the inference that plaintiffs were shown the diagram was logical, it is not clear that the diagram informed plaintiffs of the size of the parcel. The diagram did not indicate the size of the parcel to be 2.13 acres, but only provided two rough dimensions from which a party would have to calculate the acreage.

It is apparent that the trial justice in finding that plaintiffs knew of the discrepancy at the time of the closing strongly relied on plaintiffs' exhibit 7 when he stated: "Here in plaintiff's exhibit number seven it clearly shows that at the time of the closing the closing agent, Mr. Markel made a drawing which is only two and thirteen hundredths acres." He also stated, "[t]his exhibit shows the acreage is not three and five tenths acres, but two and thirteen hundredths acres."

Our review of the record indicates that the plaintiffs' exhibit 7 was a survey made by Mr. Flock, a land surveyor engaged by the plaintiffs in April 1971 to divide the parcel purchased by them into three lots. Since this was several months after the closing it is clear that the plaintiffs' exhibit 7 could not be relied upon to establish the fact that the plaintiffs knew of the discrepancy at the time of the closing in December 1970. Since the trial justice misconceived the evidence his findings cannot be sustained.

The plaintiffs' appeal is sustained, the judgment appealed from is reversed and the case is remanded to the

Superior Court for a new trial on the question of damages alone.

*Milton Bernstein,* for plaintiffs.

*Marvin A. Brill,* for defendants.