387 A.2d 694.

J. KOURY STEEL ERECTORS, INC. OF MASSACHUSETTS *v.* SAN-VEL CONCRETE CORPORATION.

JUNE 28, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.    This is an appeal from a judgment of the Superior Court finding that the plaintiff had failed to

establish the essential elements of a valid and enforceable contract. The trial was conducted before a judge sitting without a jury. The plaintiff has now appealed to this court.

The controversy arises out of a construction project known as the "New Bedford Parking Garage." In April 1974, Douglas Cringan, the contract manager for defendant San-Vel Concrete Corporation (San-Vel), forwarded invitations to bid to various steel erectors including plaintiff J. Koury Steel Erectors, Inc. of Massachusetts. At that time, San-Vel was interested in bidding on a subcontract for the supply and erection of precast concrete components to be used in said project.

On April 12, 1974, John E. Koury, president of plaintiff corporation, telephoned a bid to San-Vel in the amount of $170,000. Four days later, on April 16, Cringan telephoned Mr. Koury and informed him that his bid was very low. Subsequently, plaintiff submitted a revised bid for the sum of $200,000 which was included by San-Vel in its bid to the general contractor Peabody Construction.

Mr. Koury testified that on April 16, 1974 Cringan informed him that if San-Vel received the job, plaintiff would be awarded the steel construction work. Cringan's version of the conversations contradicted the statements made by Mr. Koury. Cringan stated that he lacked the authority to award any contracts since such power was vested in Mr. Roy, president of San-Vel. A deposition taken from Mr. Roy corroborated his testimony. It is uncontroverted that sometime later, Cringan apprised Mr. Koury of a so-called "piece" change in the construction specifications and plaintiff reduced its revised bid to $190,000. On August 20, 1974, Cringan requested a meeting with plaintiff to discuss sequencing[1] the work and materials for the project. A sequencing meeting was held on September 13, 1974 at which time plaintiff requested that defendant perform some

---

[1]The term *sequencing* describes the scheduling for delivery of materials to the job site and the determination of the work time for the job.

dry-packing and grouting. Cringan testified that the sequencing meeting with plaintiff was insignificant because he had conducted similar meetings with several other bidders.

In a conversation with Cringan on September 19, 1974, Mr. Koury confirmed his bid of $190,000, and also confirmed that defendant would perform all the dry-packing and grouting work. The parties however did not agree upon a price for that work. Instead, Cringan told Mr. Koury that he would "get back" to him. Mr. Koury testified that he made several unsuccessful attempts to contact Cringan in order to discuss the progress of the negotiations. On October 14, 1974, Cringan told Mr. Koury that he was no longer responsible for the sub-contracting and informed him that the contract had been awarded by Mr. Roy to General Gansett Steel Erectors Corporation for $177,500. Cringan denied accepting plaintiff's bid and avowed that his dealings with plaintiff typified ordinary negotiation sessions.

After reviewing all the evidence and drawing the reasonable inferences therefrom, the trial justice found the testimony of Mr. Koury to be incredible and unpersuasive. The plaintiff admits in its brief that Mr. Koury only "thought" or "felt" he had the job. The trial justice commented that a notation in Mr. Koury's handwriting addressed to Edward Prescott, an estimator for plaintiff, stating "Ed — we've got the job 99% (sure)(*till we see contract!*)" belied Mr. Koury's statement that he was convinced that he had been awarded the contract. The trial justice did not believe Mr. Koury's explanation that he did not trust anyone until a written contract was actually signed. He did, however, believe the testimony of Mr. Cringan, defendant's witness, particularly noting Cringan's statement that he had never told Mr. Koury or Mr. Prescott that plaintiff would receive the job or that its bid would be accepted.

## I

The plaintiff contends that the trial justice was clearly wrong, that he overlooked and misconceived material evi-

dence presented by plaintiff and afforded undue weight to defendant's evidence. We find no merit in this argument. It is well settled that where parties have submitted their cause to a trial justice sitting without a jury, the findings of fact of the trial justice will be given great weight. *Rego Displays, Inc.* v. *Fournier,* 119 R.I. 469, 379 A.2d 1098 (1977); *Flynn* v. *Burkhardt,* 118 R.I. 69, 371 A.2d 1057 (1977), and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Rehab* v. *Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976); *Barattini* v. *McGovern,* 110 R.I. 360, 292 A.2d 860 (1972). This same rule applies to inferences drawn by the trier of fact. *Coutanche* v. *Larivierre,* 107 R.I. 1, 164 A.2d (1970).

In the instant case the testimony is in conflict. The trial justice specifically rejected the testimony of Mr. Koury and Mr. Prescott and accepted as truthful and reliable the testimony of Cringan and Mr. Roy. The plaintiff's argument on appeal is essentially that the testimony of its witnesses rather than that of defendant's should have been believed. That argument may be properly addressed to the factfinder at trial. However, it is inapropriate in appellate proceedings. *Fournier* v. *Ward,* 111 R.I. 467, 306 A.2d 802 (1973); *Marstan Corp.* v. *Centreville Realty Co.,* 106 R.I. 36, 256 A.2d 26 (1969).

## II

The plaintiff also alleges that the trial justice erred in failing to find that defendant had entered into an express or an implied contract with plaintiff during 1974.[2] We disagree. The distinction between an express or an implied contract is not based upon legal effect but upon the way in which

[2]In its original complaint filed November 27, 1974, the plaintiff alleged that it had an oral or implied contract with the defendant on or about October 29, 1974. In the same complaint it claimed an oral or implied contract on or about September 19, 1974. Thereafter, in an amended complaint the plaintiff alleged that it had an oral or implied contract with the defendant on or about April 16, 1974. Finally, in its post-trial memorandum, the plaintiff contended that the oral or implied contract came into existence in May 1974.

mutual assent is manifested. 1 *Williston, Contracts* §3 (3d ed. 1957). In an expressed contract the terms and conditions of the contract are assented to orally or in writing by the parties.

In *Bailey* v. *West,* 105 R.I. 61, 249 A.2d 414 (1969), this court held that the elements of a contract "implied in fact" are as follows:

> "* * * A 'contract implied in fact,' * * *or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, as implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.
>
> " 'It has been said that a contract implied in fact must contain all the elements of an expressed contract. So, such a contract is dependent on mutual agreement or consent, and on the intention of the parties; and a meeting of the minds is required. A contract implied in fact is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown. Such a contract does not arise out of an implied legal duty or obligation, but out of facts from which consent may be inferred; there must be a manifestation of assent arising wholly or in part from acts other than words, and a contract cannot be implied in fact where the facts are inconsistent with its existence.' " *Id.* at 64, 249 A.2d at 416.

To establish either an express or an implied contract, one must prove mutual agreement and intent to promise. In the instant case, the trial justice found that there was no mutual assest or meeting of the minds between the parties. He further found that defendant never intended to enter into an enforceable contract with plaintiff. An examination of the transcript reveals that these findings by the trial justice are

supported by competent evidence. Therefore, they may not be disturbed by this court on review.

### III

The final argument raised by plaintiff is based upon the doctrine of promissory estoppel. In the case of *East Providence Credit Union* v. *Geremia*, 103 R.I. 597, 239 A.2d 725 (1968), this court, citing language in *Restatement of Contracts* §90 (1932) defined the doctrine as follows:

> " 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of its promise.' " 103 R.I. at 601, 239 A.2d at 727.

The plaintiff contends that the facts in the instant case lend themselves to the application of this doctrine. We disagree. We believe, for the reasons previously stated, that the trial justice was correct in finding that no promise was made by Cringan to Mr. Koury regarding acceptance of the plaintiff's bid. Therefore, in the circumstances of the case before us, the doctrine of promissory estoppel is inapposite.

The plaintiff's appeal is denied and dismissed, and the order appealed from is affirmed.

*Abedon & Visconti Ltd., Girard R. Visconti*, for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Robert W. Lovegreen*, for defendant.