**Frederick J. DALEY, Administrator of the Estate of John Francis DALEY**

v.

**Anthony J. SOLOMON et al.**

**No. 88–228–Appeal.**

Supreme Court of Rhode Island.

June 6, 1989.

Bruce J. Katz, Pawtucket, for plaintiff.

James E. O'Neil, Atty. Gen., Terence J. Tierney, Asst. Atty. Gen., for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a summary judgment entered in the Superior Court in favor of the plaintiff, administrator. We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

The decedent, John Francis Daley (John), entered the Rhode Island Veteran's Home on January 11, 1977. At the time that he was admitted to the home, he was mentally incompetent in the fullest sense of that term. He was completely disoriented in regard to time, place, and circumstances. He remained in the home until he was transferred to the Veteran's Hospital on May 29, 1981, the date of his death. During that period there was no change in his mental condition. At the time of his death, John was survived by five sisters and two brothers. Frederick J. Daley, one of the brothers, was appointed as administrator of the estate on November 3, 1981. At the time of his death, John had a bank account with a balance of $16,193.93. The sum of $1,000 was deducted from this account and utilized to pay John's funeral expenses. The remainder of the account is the subject of the dispute between the parties. The plaintiff, administrator, filed an action in the Superior Court for Providence County against the State Treasurer and the director of the Department of Social and Rehabilitative Services, seeking to recover the balance of this fund. The defendants claim that since the decedent died without a will, the remainder of the bank account should become the property of the State of Rhode Island in accordance with G.L.1956

(1982 Reenactment) § 30–24–9 to be used and applied by the assistant director of the Department for Social and Rehabilitative Services for the purpose of the Veteran's Home fund. At the time of John's death, this statute read as follows:

"All goods, chattels, property, money, and effects of a deceased inmate of the Rhode Island Veterans' Home, which have not been otherwise disposed of by him, shall upon his decease become the property of the State of Rhode Island, and shall, by the Director of Social and Rehabilitative Services or his Designee, be applied to the uses and purposes of said home; provided, however, that said Director may in his discretion deliver to any surviving relative of said deceased member any article or articles of such property or effects as may serve as a memento of said deceased inmate." G.L. 1956 (1968 Reenactment) § 30–24–9, as amended by P.L.1981, ch. 86, § 1.

This statute was construed in a comprehensive opinion of this court in *McElroy v. Hawksley*, 97 R.I. 100, 196 A.2d 172 (1963). In that case, the court outlined the history of this statute beginning with P.L. 1889, ch. 733, and compared this statute with similar congressional enactments that had been upheld by the United States Supreme Court in *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961). The gist of this court's determination in *McElroy* was that the Rhode Island statute was based upon the theory of contract, express or implied. This rationale was set forth in the following language.

"In enacting § 30–24–9 the legislature did not thereby evidence an intent to change the laws of descent and distribution; rather did it indicate a purpose to extend to a restricted class of persons * * * the privileges and benefits of the Home. Its beneficence was subject, however, to the condition that if he did not otherwise dispose of his property it should upon his death become the property of the state if at such time he was in inmate status.

"Under well-settled rules of law, we must presume that Quill had knowledge of the provisions of § 30–24–9 and that his failure otherwise to dispose of his property would result upon his death in its being used, at the expense of his next of kin and heirs-at-law, to provide comforts and conveniences for those who had been his companions at the Home and or others who might in the future by force of circumstances be required there to become inmates. *See Smith v. Bradford*, 51 R.I. 289, 295 [154 A. 272 (1931)]; *Kenyon v. United Electric Rys.*, 51 R.I. 90, 95 [151 A. 5 (1930)].

"By applying for and receiving benefits under chaps. 17 and 24 of title 30 he both consented to and contracted with the state as to what disposition would be made of any property he might leave in the event of his death intestate and an inmate. His consent thereto can be inferred just as well from his conduct in entering the Home and remaining there as it could be from a specific oral or written agreement. Having been given, he is as effectively bound thereby as if his obligation were specifically set forth in a duly executed writing. *See McCarthy v. Hughes*, 36 R.I. 66, 73 [88 A. 984 (1913)]." *McElroy*, 97 R.I. at 107–08, 196 A.2d at 176.

We are of the opinion that the rationale and reasoning of *McElroy* is conclusive of the instant controversy. It is undisputed that the decedent in the case at bar was incompetent at the time of his admission to the Home and remained incompetent to the date of his death. He was unable to understand the nature and effect of his acts. He was therefore unable to make a contract either expressly or by implication. *See Sosik v. Conlon*, 91 R.I. 439, 164 A.2d 696 (1960); *Longley v. McCullough*, 68 R.I. 395, 27 A.2d 831 (1942). In respect to the requirement of mutual assent in order to contract, either expressly or by implication, *see J. Koury Steel Erectors, Inc. of Mass. v. San–Vel Concrete Corp.*, 120 R.I. 360, 387 A.2d 694 (1978).

Consequently, under the contractual theory he did not have the capacity to deprive his estate or heirs of the interest that would otherwise have been bestowed upon them by the statute of descent and distri-

bution. We do not suggest that the Rhode Island Legislature might not have been able to divest the heirs of their interest in the decedent's estate as did Congress in 38 U.S.C.A. § 5221, the statute at issue in *United States v. Oregon, supra.* Such an automatic vesting provision might well survive a constitutional challenge, but it is not contained in § 30–24–9 as interpreted by this court in *McElroy.* The creation of an automatic vesting provision is a matter for the Legislature rather than for this court.

Consequently, since the decedent was unable to contract or to make a will, his estate should pass, as the trial justice has determined, in accordance with the statute of descent and distribution.

For the reasons stated, the defendants' appeal is denied and dismissed. The judgment entered by the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.