DECISION
These two matters were consolidated and heard by the Court without a jury. Rule 52(a) of the Rules of Civil Procedure requires the court sitting without a jury to find the facts specially, and to separately state its conclusions of law thereon. Decision, reserved pending the filing and review of proposed findings of fact and post-trial memoranda, is rendered herein.
FACTS AND PROCEDURAL HISTORY
Both of these matters relate to materials provided for and construction upon a premises located on Sandy Lane in Warwick, a site owned by defendant Serafino Genuario (hereinafter referred to as Genuario) and chosen by him, at least in part, for relocation of his photography studio (hereinafter referred to as the construction site). Civil action number KC 92-157 is a petition to enforce a materialman's lien for the sum of $18,282.78 filed by Grossman's, Inc. (hereinafter referred to as Grossman's) against Genuario for construction materials delivered by Grossman's to the construction site. Jurisdiction is pursuant to General Laws 1956 (1984 Reenactment) § 34-28-10. Civil action number KC 92-158 is a contract claim for the same amount, $18,272.78, owed to Grossman's by the defendant contractor Frank A. Tortolani (hereinafter referred to as Tortolani) for the same construction materials delivered by Grossman's and accepted by Tortolani at the construction site. After these two matters were consolidated, Tortolani crossclaimed against Genuario for the sum of $30,699.33 on theories of breach of contract and quantum meruit. In April of 1995, by agreement of the parties, Genuario, pursuant to G.L. § 34-28-17, deposited the sum of $25,178.58 in cash in the Registry of Court in return for Grossman's release of the Notice of Lis Pendens. Jurisdiction is pursuant to G.L. 1956 (1985 Reenactment) § 8-2-14.
After thorough review of the evidence and testimony, the Court finds the following facts:
 1. Tortolani is a general contractor with over twenty-five (25) years experience in residential and commercial renovation and new construction.
 2. On or about November 1, 1990, Tortolani submitted a proposal to Genuario for certain construction work.
 3. The fair and reasonable cost of the construction was $108,260.00.
 4. On or before August 1, 1991, Genuario filled out a Building Permit Application, delivered and paid for it. The Application was for $108,000.00 of construction work.
 5. On or about August 1, 1991, Tortolani commenced work at the construction site.
 6. At no time during the project did Genuario have the funds available to complete the construction project.
 7. The agreement between Tortolani and Genuario provided for two progress payments of $40,000.00 and a final payment for the balance.
 8. On or about August 30, 1991, Genuario tendered a check in the sum of $40,000.00 to Tortolani.
 9. During the course of construction, which proceeded from August through October, Tortolani performed extra construction work, not encompassed by the original proposal, at the request of, and for the benefit of Genuario.
 10. Tortolani and Genuario discussed the extra work some time in early November when Tortolani requested the second $40,000 payment.
 11. After Tortolani showed Genuario his log and list of extra work, Genuario, in response, directed that no further extra work be done.
 12. In early November, Genuario admitted to Tortolani that he did not have the funds to complete the project.
 13. On or about November 8, 1991, Genuario agreed upon an alternate payment plan of $10,000.00 per week for four weeks.
 14. Pursuant thereto, on or about November 8, 1991, Genuario tendered a check to Tortolani in the sum of $10,000.
 15. When the next weekly installment, due on or about November 15, 1991, was not paid, Tortolani removed his workers from the site and stopped performance.
 16. As a result of a meeting between Genuario and Tortolani in late November, Genuario tendered a check to Tortolani in the sum of $16,400.00 comprising approximately $15,000.00 for extra work performed, plus a $1,400.00 payment on a second revised payment schedule of $1400.00 per week.
 17. There were insufficient funds at Citizens Bank when Tortolani tried to cash said check.
 18. On November 15, 1991, Genuario stopped payment on the check and terminated Tortolani's services.
 19. Tortolani expended or incurred the following amounts for labor and materials at the construction site:

 Materials:
 Other than Grossman's $ 8,821.15
 Grossman's 19,270.70
 _________
 TOTAL MATERIALS $28,091.85
 Subcontractor Paid:
 Dan Robataille (Ex. T-M) $ 500.00
 Joe Kenney (Ex. T-N) 300.00
 Jim Facer (Ex. T-O) 1,900.00
 ________
 TOTAL PAID SUBCONTRACTORS $ 2,700.00
 Labor Paid:
 N.E.E.D. Payroll (Ex. T-P) $ 12,609.00
 Carl Smith (checks 2 wks) (Ex. T-Q) 970.00
 Carl Smith (cash 1st 2 wks.) 800.00
 _________
 $ 14,379.00
 Overtime Paid:
 Carl Smith $ 924.50
 Joe Kenney 639.50
 ________
 $ 1.564.00
 TOTAL PAID LABOR AND OVERTIME $15,943.00
 TOTAL RENTAL (Heavy Equipment): $ 6,160.00
 _________
 TOTAL JOB COST $52,894.85

 20. Tortolani is entitled to reasonable profit and overhead calculated on a percentage of his costs.
 21. A reasonable overhead allowance is twenty (20%) percent of cost; a reasonable profit margin of ten (10%) percent.
 22. Tortolani is owed for work performed in the sum of $19,821.20 calculated as follows:

 Total Job Cost: $52,894.85
 Overhead @ 20% 10,578.97
 _________
 $63,473.82
 Profit @ 10% 6,347.38
 _________
 $69,821.20
 Less: Payments made 50,000.00
 _________
 $19,821.20

 23. Tortolani was wrongfully terminated from the job by Genuario.
 24. Tortolani is entitled to the profit he would have earned if he had been allowed to complete the project.
 25. The reasonable profit on the balance of the work is $6,637.37 calculated as follows:

 Contract Amount $108,000.00
 Extra work 15,000.00
 __________
 Total Construction $123,000.00
 Less: Completed and paid to date 50,000.00
 __________
 Balance due to complete (includes
 10% profit) 73,000.00
 Balance to complete less profit
 (110% x = $73,000.00) 66,363.63
 __________
 Profit on balance $ 6,636.37

 26. The total due Tortolani from Genuario is $26,457.57.
 The Court further finds the following facts:
 1. Genuario engaged the construction services of Tortolani for the purpose of remodeling the construction site.
 2. As testified by Tortolani, he owes Grossman's the sum of $18,282.78 for the materials it delivered to the construction site.
 3. With the exception of certain windows and doors, the said materials were installed on the constriction site during the period that Tortolani performed construction services there.
 4. Former Grossman's salesperson Richard Martino (hereinafter referred to as Martino) serviced Tortolani's Grossman's account; he prepared the materials list based on a blueprint supplied by Tortolani; he appeared on the construction site to confirm that the materials were delivered and also to determine if other building materials were required.
 5. Martino personally viewed the installation of the materials upon the construction site and returned to the construction site after the construction was completed; Martino confirmed that all of the windows and doors that were a part of the Grossman's order had been installed upon the construction site.
 6. To the best of Martino's knowledge, Tortolani had no other jobs in progress while he was servicing the construction site and no materials were ordered during this time period on Tortolani's Grossman's account that were not shipped to the construction site.
 7. Tortolani had no other jobs in progress while he was servicing this construction site.
 8. With the exception of 7 to 8 sheets of plywood, approximately 20 pieces of framing materials, such as 2" x 4" and/or 2" x 6" and two-thirds of a roll of Ty-Vac and the windows and doors, all of the materials that had been shipped to the construction site were installed by Tortolani.
 9. Said windows and doors were installed by a subsequent contractor whom Genuario hired.
 10. Grossman's credit agreement with Tortolani provides for interest on the outstanding balance at the rate of one and one-half (1.5) percent per month and reasonable attorney's fees.
 11. Genuario stipulated that Grossman's properly perfected its mechanics' lien upon the construction site premises.
MATERIALMAN'S LIEN
While not contesting the legal validity of the lien, Genuario disputes the sum claimed by Grossman's in its petition to enforce its lien and argues that Grossman's must establish that the sum represented for the value of its lien represents materials used and installed at the construction site. Genuario contends that the only evidence of materials which were even delivered to the construction site were the Grossman's billing receipts to Tortolani and that said receipts represent only $15,000. Further, Genuario suggests that a credit is due him for certain lumber and plywood removed from the construction site by Tortolani when vacating in mid-November. Consequently, Genuario would stipulate the value of Grossman's lien as $12,000.[1]
Rhode Island's Mechanics' Lien statute is "designed to prevent unjust enrichment of one person at the expense of another." Art Metal Construction Co. v. Knight, 56 R.I. 228, 246,185 A. 136, 145 (1936). While the title of General Laws Chapter 28 of Title 34, Mechanics' Liens, "reminds us that it was primarily intended to secure the mechanic only, its terms now include the materialman who does no work. . . ." Field Slocombv. Consolidated Mineral Water Co., 25 R.I. 319, 321, 55 A. 757, 758 (1903). Section 1, subpart (a) of the statute provides in pertinent part, that,
 "Whenever any building . . . or other improvement shall be constructed, erected, altered or repaired by oral or written contract with or at the oral or written request of the owner . . . of the land on which the improvement is located . . . the building . . . or other improvement, together with the land, is hereby made liable and shall stand subject to liens for . . . the materials used in the construction. . . which shall have been furnished by any person." General Laws 1956 (1984 Reenactment) § 34-28-1(a).
As stated by our Supreme Court, the statute "is intended to afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches." Field Slocomb, 25 R.I. at 320, 55 A. at 758 (citing Parker v. Bell, 7 Gray, 432). In petitioning to enforce a lien, a plaintiff must prove every item of its claim by a fair preponderance of the evidence. F.D. Kendall Lumber Co. v.DiDonato, 78 R.I. 401, 402, 82 A.2d 403, 404 (1951).
From the evidence presented at trial, the Court finds certain facts uncontested. First, it is undisputed that Genuario engaged Tortolani to provide materials and labor for renovation of the construction site. Next, the testimony of Tortolani and Martino establishes indisputably that Grossman's furnished and delivered materials to the construction site which were not paid for valued at $18,282.78. Both Tortolani and Martino convincingly testified that said materials were used therein. As to Genuario's claim for a credit on the lien for lumber allegedly removed by Tortolani, thus not used in the construction, the Court rejects same. The Court finds that Grossman's is due and owed $18,282.78 by Genuario and that it has a claim in said amount (together with interest) against the funds on deposit in the Registry of this Court in lieu of a claim against the real estate under the Mechanics' and Materialmans' statute.
With respect to Grossman's request for costs and attorney's fees, costs shall be taxed by the Clerk and the Court reserves decision on attorney's fees pending a documented, reasonable request with an affidavit in support thereof.[2]
CREDIT AGREEMENT
Because Tortolani testified that he voluntarily executed a Grossman's Credit Agreement[3] and that he, in fact, owes the sum of $18,282.78 on his Grossman's account as of January 25, 1992, the Court finds in favor of Grossman's. Accordingly, judgment may enter for Grossman's as against Tortolani.
Grossman's further seeks its costs and also attorney fees as provided for in the Credit Agreement. Costs shall be taxed by the Clerk and the Court reserves decision on attorney's fees as aforesaid.
TORTOLANI'S CROSSCLAIM AGAINST GENUARIO
Tortolani crossclaimed against Genuario for the sum of $30,699.33 on theories of breach of contract and quantum meruit. The initial inquiry is whether a contract existed between Tortolani and Genuario. "To form a valid contract, each party to the contract must have the intent to promise or be bound." Smithv. Boyd, 553 A.2d 131, 133 (R.I. 1989) (citing J. Koury SteelErectors, Inc. v. San-Vel Concrete Corp., 120 R.I. 360, 365,387 A.2d 694, 697 (1978); Farnsworth, sec. 3.1 at 106). "In general, it is a party's objective intent that will be considered as creating either an offer or acceptance. [The court looks to] an external interpretation of the party's or parties' intent as manifested by action." Smith, 553 A.2d at 133. (Citations omitted.) "In an express contract, the terms and conditions of the contract are assented to orally or in writing by the parties." J. Koury Steel Erectors, Inc., 120 R.I. at 365, 387 A.2d at 697. It is undisputed that there was no signed written agreement, although Tortolani had submitted a written proposal to Genuario containing terms, conditions, details of the nature and scope of the work to be performed, and a price of $108,260. It is also undisputed that Genuario obtained a building permit application and filed it on or about August 1, 1991, for construction work in the amount of $108,000, and Tortolani began work in mid-August. The court finds that the reasonable inference to be drawn from the evidence is that an express oral contract for the construction services of Tortolani existed between Genuario and Tortolani for a total contract price of $108,000.
The oral agreement between Tortolani and Genuario provided for two progress payments of $40,000 and a final payment for the balance due. Genuario paid Tortolani the first $40,000 by check at the end of August 1991, but was unable to pay the second $40,000 in November 1991, and admitted to Tortolani that he did not have the funds to complete the project. In early November, Tortolani agreed to accept the sum of $10,000 per week for four weeks, and Genuario paid the first $10,000 payment on November 8, 1991. After Genuario breached the contract by failing to pay the next weekly installment in mid-November, Tortolani vacated the site.
During the course of construction, Tortolani performed extra construction work at the request of, and for the benefit of, Genuario. Genuario acknowledged that the work was outside their contract, and agreed to pay for it.
The general rule concerning damages is that they are intended "to place the injured party in as good a position as he would have been in had the contract been fully performed as promised.Rhode Island Turnpike v. Bethlehem Steel Corp., 119 R.I. 141, 166, 379 A.2d 344, 357 (1977) (citing 5 Corbin on Contracts § 992 (1964)). When an owner breaches a construction contract by failing to make an installment payment, it is appropriate to award the builder his actual expenditures less the value of materials on hand, plus the profits he can prove with reasonable certainty. Aiello Construction, Inc. v. Nationwide Tractor,122 R.I. 861, 867, 413 A.2d 85, 87-88 (1980) (citations omitted). InAiello, the plaintiffs contracted to prepare and pave a "yard" area of defendant trucking company, which defaulted after making only partial payment. The plaintiff stopped working when only "preliminary" work was done. In upholding the trial court, the Rhode Island Supreme Court noted that "a court must select the most appropriate remedy depending [on] the factual posture of the case and the election of remedy by the plaintiff." Id. at 867, 413 A.2d at 88.
Because there was a clear breach by Genuario and no question of defective performance, Tortolani is entitled to his costs, expenses and profit less credit for amounts previously paid by Genuario.
Based on the court's findings of fact, Mr. Tortolani is hereby awarded the sum of $26,457.57, due from Mr. Genuario. This award represents the balance due on work performed ($19,821.20) plus lost profits ($6,636.37). Costs shall be taxed by the Clerk.
The prevailing party in each of the matters shall prepare a proposed order which will be settled after notice.
[1] Genuario requests a credit for said $12,000 sum in the consolidated case due to his overpayment of Tortolani.
[2] Of course, the reasonableness of fees will be subject to a hearing at which all parties may be heard and shall have a right to present evidence, if necessary.
[3] Said credit agreement provides for interest on an unpaid balance at the rate of one and one-half percent per annum through the date of entry of judgment.