**RHODE ISLAND INSURERS' INSOLVENCY FUND**

v.

**LEVITON MANUFACTURING COMPANY, INC.**

No. 99–410–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 2000.

Joseph C. Tanski, Allan Cooke, V. James Santaniello, for plaintiff.

Deming E. Sherman, Kimberly Ann O'Connell, Rebecca Tedford Partington, Providence, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

Goldberg, Justice.

This case represents the next chapter in the previously decided *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 716 A.2d 730 (R.I.1998) (*Leviton I*). The defendant, Leviton Manufacturing Company, Inc. (Leviton), is appealing from the entry of summary judgment and the imposition of sanctions in favor of the plaintiff, Rhode Island Insurers' Insolvency Fund (the Fund). Leviton and its wholly owned subsidiary corporation, American Insulated Wire Corporation (AIW), were insured for workers' compensation liability by American Mutual Life Insurance Company (American Mutual)

during the period from March 15, 1953, through 1986. On March 9, 1989, however, American Mutual was declared insolvent. Thereafter, the Fund assumed American Mutual's obligations and, pursuant to G.L. 1956 § 27–34–11, sought reimbursement from Leviton. We affirm the entry of summary judgment and the imposition of sanctions, but sustain the appeal as it relates to the award of pre-judgment interest.

## Facts and Procedural History

The basic facts remain unchanged. The Fund is a nonprofit unincorporated legal entity established by the Legislature as a means to guarantee payment to an insured in the event an insurer becomes insolvent and is unable to discharge its obligations. *See* § 27–34–2. Created to protect both claimants and policyholders from the catastrophic consequences of an insurer's insolvency, the Fund's income is derived from assessments made upon all insurers transacting business in Rhode Island. *See McGuirl v. Anjou International Co.,* 713 A.2d 194, 197 (R.I.1998); *Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund,* 703 A.2d 1097, 1100 (R.I. 1997). *See also* § 27–34–2. We have consistently construed the act in accordance with the public-policy considerations that support the objectives of the statute. *See Medical Malpractice Joint Underwriting Association,* 703 A.2d at 1102; *Bassi v. Rhode Island Insurers' Insolvency Fund,* 661 A.2d 77, 80 (R.I.1995).

On May 13, 1993, the Fund filed a complaint in Providence County Superior Court, alleging that it had made payments in excess of $1 million on Leviton and AIW's behalf. After it was determined that Leviton and AIW had a combined net worth in excess of $50 million, the Fund, pursuant to § 27–34–11(b)(1),[1] demanded

---

**1.** General Laws 1956 § 27–34–11(b)(1) provides in pertinent part:

"(b) The fund shall have the right to recover from the following persons the amount of

any 'covered claim' paid on behalf of the person pursuant to this chapter:

(1) Any insured whose net worth on December 31 of the year next preceding the

full recovery for the sums previously paid as a result of American Mutual's insolvency. Leviton defended, asserting numerous affirmative defenses, including several challenges to the constitutionality of § 27–34–11(b)(1). The Fund moved for partial summary judgment with respect to the constitutional claims, and sought a monetary judgment against Leviton. The trial justice granted the Fund's motion concerning the constitutional defenses and this Court affirmed in *Leviton I*. However, referring to the non-constitutional defenses, the trial court found that summary judgment on the amount owed by Leviton presented an issue of fact that was at the very least premature. The trial justice then permitted Leviton additional time to review the Fund's claim files relative to payment amounts and the reasonableness of settlements made by the Fund. It is from this point that the current controversy proceeds.

The Fund's claim files were not reviewed by Leviton,[2] and on February 24, 1998, approximately a year and a half after the entry of the order denying summary judgment, the Fund sought to compel Leviton to review the claim files and respond to the Fund's request for admissions. The motion was granted on March 18, 1998, and Leviton was ordered to review the claim files and respond to the request for admissions within seventy-five days from the entry of the order. In its amended response, filed on June 22, 1998, Leviton averred that it was unable to respond because it believed the requests called for conclusions of law. Dissatisfied with these responses, the Fund again moved to compel more responsive answers on August 6, 1998.

In addition, on August 13, 1998, the Fund moved to specially assign the case for final resolution. The trial justice as-

signed to the case immediately directed that all discovery be completed by December 16, 1998, and scheduled a pretrial conference for December 17, 1998.

The Fund also served Leviton with interrogatories requiring Leviton to identify its expert witness. At this point, Leviton identified Global Risk Consultants (Global) as its expert witness and requested that Global be allowed to review the Fund's files. Global reviewed the files in October 1998.

On December 2, 1998, the Fund again moved to compel Leviton to supplement its answers to interrogatories and to disclose Global's opinion based upon its review of the claim files. On December 17, 1998, at the pretrial conference, Leviton stipulated that it did not intend to call an expert witness or offer any expert testimony at trial, but rather intended to rely on the testimony of a Leviton employee. As a result, the Fund's request for discovery of the expert's opinion was denied. At the pretrial conference, Leviton also stipulated that if the Fund was entitled to any interest, it should be calculated under the statutory rate of 12 percent, thus precluding the need for discovery on the matter. However, Leviton maintained that it never relinquished its position that no pre-judgment interest should be awarded in this case. Leviton was granted an additional opportunity to review the Fund's claim files before December 31, 1998. On January 5, 1999, Leviton served its second amended response to the Fund's request for admissions. In its amended response, with respect to sixty-two of the sixty-three claims at issue, Leviton admitted that payment of compensation benefits by the Fund was required by the Workers' Compensation Act (the Act); that the payments made by the Fund satisfied Leviton's lia-

date the insurer became an insolvent insurer exceeded fifty million dollars ($50,000,-000) and whose liability obligations to other persons are satisfied in whole or in part by payments made under this chapter \* \* \*."

2. It is unclear whether the files were not reviewed because they were not made available by the Fund; made available by the Fund but not timely viewed by Leviton; or, made available by the Fund but that status not clearly communicated to Leviton.

bility obligations under the Act; and that the claims arose out of and did not exceed the limits of the underlying workers' compensation policy. Notwithstanding these admissions, Leviton argued to the trial justice, as it does now, that the issue of the reasonableness of the amounts paid by the Fund for each individual claim presented an issue of material fact.

On January 7, 1999, Leviton requested that its witness, Leviton employee Stephen J. Pierce (Pierce), be deposed in Boston, where the claim files were located, so that he could have access to the files during questioning. This request was denied. On January 11, 1999, Pierce, a Leviton employee for at least six years, was deposed and admitted that he personally had never reviewed the Fund's claim files.

Following this deposition, without seeking leave of court as required by Rule 36 of the Superior Court Rules of Civil Procedure, Leviton served its third amended response to the Fund's request for admissions and purported to withdraw more than fifty of Leviton's previous admissions. In addition, Leviton produced 5,000 pages of personnel files that were originally requested by the Fund during discovery, but were not timely produced.[3] The Fund moved to strike Leviton's third amended response. This motion was heard and granted on February 5, 1999. At that time, the court also denied Leviton's request for additional review of the Fund's claim files stating "there has been ample opportunity in this now six-year-old case to [review the claim files]."

On February 11, 1999, the Fund renewed its motion for summary judgment, relying on Leviton's admissions and three affidavits submitted by the Fund. In opposition of the Fund's motion, Leviton submitted two affidavits, an affidavit prepared by Donald J. Jubin, and Pierce's affidavit. Although the Fund's motion to strike or disregard the Pierce affidavit was denied,

the trial justice granted summary judgment, reasoning that the Pierce and Jubin affidavits failed to raise a genuine issue of material fact concerning the Fund's handling of the workers' compensation claims.

On May 12, 1999, the Fund moved for sanctions due to the "numerous frivolous, inconsistent, and indefensible" positions taken by Leviton in this action. The court conducted a hearing and entered judgment on July 2, 1999. The judgment ordered that the Fund recover: $2,839,023.58 for claims paid by the Fund on Leviton's behalf through December 31, 1998; $2,544,235.76 in pre-judgment interest through December 31, 1998, and, $946.95 per diem thereafter. Costs and attorneys fees were also ordered, totaling $125,000. In imposing these sanctions the court found that, "[t]his case * * * should not have even been a case * * *. And some sanctions would be warranted for [the] filing of any document that suggested that there were any meritorious substantive defenses on the part of Leviton, because at the time this matter was resolved there were none." On appeal, defendant raises four issues in support of its argument that summary judgment was improperly granted.

### Summary Judgment

■■■■ It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis. *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). "In its review of the granting of a motion for summary judgment, this Court applies the same rules and analysis as those applied by the trial justice." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996) (citing *Mallane v. Holyoke Mutual Insurance Company in Salem*, 658 A.2d 18, 19–20 (R.I.1995)). "Accordingly, if our review of the admissible evidence viewed in the light most favorable

---

**3.** Leviton asserts that it made the personnel files available as soon as it became aware of their existence, while the Fund accuses Levi-

ton of flatly denying the existence of the files, or at the very least, willful blindness.

to the nonmoving party reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the grant of summary judgment." *Accent Store Design, Inc.*, 674 A.2d at 1225 (citing *Mallane*, 658 A.2d at 20). "Moreover, a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc.*, 674 A.2d at 1225 (citing *Manning Auto Parts, Inc. v. Souza*, 591 A.2d 34, 35 (R.I.1991)).

■ The party opposing summary judgment must provide the court with competent evidence that establishes the existence of a material fact. *Paradis v. Zarrella*, 683 A.2d 1337, 1339 (R.I.1996). Rule 56(e) of the Superior Court Rules of Civil Procedure states that this proof may be presented in the form of an affidavit "made on personal knowledge * * * set[ting] forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ As an initial matter, we emphasize that trial counsel stipulated that Leviton did not intend to present an expert witness in this case. Although this was obviously a tactical move on the part of trial counsel, we conclude that this decision proved fatal in Leviton's attempt to oppose summary judgment. This Court has consistently held that in order to establish the standard of care in a negligence claim, expert testimony is mandated unless clearly obvious to a lay person. *See Sheeley v. Memorial Hospital*, 710 A.2d 161 (R.I. 1998) (expert testimony is essential requirement to prove standard of care); *see also Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir.1985) (in a legal malpractice claim plaintiff must produce evidence to create genuine issue of fact as to standard of care); *Sousa v. Chaset*, 519 A.2d 1132 (R.I. 1987) (departure from standard of care

requires expert testimony unless clearly obvious to lay person); *Young v. Park*, 417 A.2d 889 (R.I.1980). Although none of these cases involves the settlement of workers' compensation or insurance claims, we are of the opinion that the requirement of expert testimony to establish the standard of care here is equally necessary. Opinion testimony of lay witnesses who lack the requisite education, training, and experience is insufficient as a matter of law on the issue of the negligent handling of workers' compensation claims.

■ Accordingly, we turn to the first area of dispute, the trial court's treatment of Pierce's affidavit submitted by Leviton. Leviton asserted that the trial court erred in two respects with its treatment of this affidavit. First, Leviton suggested that Rule 701 of the Rhode Island Rules of Evidence, permits a lay person to testify about the professional standard of care required for managing the settlement of workers' compensation claims. Leviton argued that the Fund breached its duty of care in handling the workers' compensation claims resulting in higher settlement amounts than would typically be expected in similar cases. In support of its argument, Leviton placed heavy reliance on the affidavit submitted by Pierce, an industrial safety manager at Leviton. Leviton suggested that Mr. Pierce's qualifications under his current employment at Leviton, coupled with his independent experience in administering workers' compensation claims permits him to provide competent *lay* opinion testimony relative to the Fund's purported breach of the professional standard of care in settling such claims. Leviton further asserted that Pierce may testify, pursuant to Rule 701, based on his experience at Leviton and render opinion testimony relative to the Fund's handling of claims on behalf of Leviton. In support of this argument, Leviton stated that Pierce "clearly had sufficient expertise [relating to his role as an industrial safety manager] to give lay opinions."

■ This argument, however, misconstrues the function and purpose of a lay witness. By its very definition, a lay witness is a "[p]erson called to give testimony who does not possess *any expertise in the matters about which he [or she] testifies.*" Black's Law Dictionary 888 (6th ed.1990). (Emphasis added.) Further, under Rule 701, the opinion testimony offered by a lay witness is limited to two narrow situations: first, the testimony must be "rationally based on the perception of the witness," and, second, it must be "helpful to a clear understanding of the witnesses testimony or determination of a fact in issue."[4] Although Leviton may be correct in stating that Pierce's testimony is helpful to determine the facts in issue, this satisfies only one prong of the rule. In order to be admissible, his testimony also must be rationally based on his perception, which it clearly was not. The type of testimony considered under the first prong of the rule is properly limited to events that occur in the presence of the testifying witness to enable the trier of fact to better picture the events and how they were perceived at the moment they occurred. We have consistently held that testimony under Rule 701(A) is applicable to this type of eye witness testimony. *See State v. Speaks,* 691 A.2d 547 (R.I.1997) (a lay witness may not render an opinion on what another person would or would not do in the circumstances presented); *State v. St. Jean,* 554 A.2d 206 (R.I.1989) (testimony proper where witness personally observed automobile approaching); *State v. Fogarty,* 433 A.2d 972 (R.I.1981) (testimony proper where witness had the opportunity to personally observe the person and to give the concrete details of intoxication).

Early in this litigation, Leviton retained and designated Global as its claims handling expert. Although Global reviewed the Fund's claim files and drafted reports concerning its findings, Leviton withdrew Global as its expert witness. At no time during this seven-year litigation did Pierce personally review any of the Fund's claim files. The opinion testimony offered in his affidavit rests solely on a comparison of his previous work experience and an examination of third party reports, presumably Global's, about the Fund's claim files. As a result, the conclusions developed in his affidavit are wholly reliant on the documents and reports prepared by others, presumably Global, which had viewed the relevant files. We deem this testimony to be more properly classified as expert opinion testimony under Rule 702, and therefore improperly offered as lay witness testimony under Rule 701. We therefore conclude that Pierce's testimony was in actuality, the conclusion of an expert witness offered in violation of the stipulation by counsel.

The second dispute concerns whether the Pierce affidavit raised a material issue of fact to support Leviton's assertion that the Fund negligently handled the claims. We previously have held that " 'naked conclusory assertions in an affidavit filed in opposition to a motion for summary judgment are inadequate to establish the existence of a genuine issue of material fact and therefore do not afford a basis for reversal * * *.' " *Roitman & Son, Inc. v. Crausman,* 121 R.I. 958, 959, 401 A.2d 58–59 (1979). As noted, Pierce never personally reviewed any of the relevant files, but merely relied on the reports of others as the basis of his conclusions. Inasmuch as Pierce possessed no personal knowledge about any material contained in the files, any conclusions that he drew were insufficient to establish the existence of a material fact. In addition, negligent claims handling can be established only by expert testimony. Accordingly, we are satisfied

---

**4.** Rule 701 of the Rhode Island Rules of Evidence provides: "**Opinion testimony by lay witnesses.**—If the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

that the Pierce affidavit was wholly incompetent to demonstrate a breach of the standard of care owed to Leviton by the Fund, and conclude that summary judgment was properly granted. Therefore, we affirm the decision of the trial justice.

### Pre–Judgment Interest

■ At the close of the trial, the trial justice, found that Leviton had entered into a binding agreement to pay pre-judgment interest on any amount recovered by the Fund, and, accordingly, awarded the Fund pre-judgment interest in the amount of $2,544,000. The Fund asserted that Leviton had agreed to pay pre-judgment interest, and further, that G.L.1956 § 9–21–10,[5] the pre-judgment interest statute, applies to actions for civil damages, including this case. In opposition, Leviton argued that this is not an action for civil damages, but rather an action for declaratory judgment and reimbursement and thus § 9–21–10 does not apply. In addition, Leviton argued that the Legislature's recent amendment to § 27–34–11(b)(1), which precludes the award of pre-judgment interest in reimbursement actions, should be applied to the judgment in this case. Lastly, Leviton argued that the trial justice erred in finding that a binding agreement to pay pre-judgment interest existed, when the record demonstrates that Leviton agreed to the rate of interest that would apply if any such interest were awarded.

On appeal, Leviton challenged, as it did below, the trial justice's application of the pre-judgment interest statute and argued that by its very terms § 9–21–10 applies only to civil actions for damages. It further alleged that this case is not an action for damages, but rather an action for declaratory judgment and reimbursement to the Fund, and, therefore, § 9–21–10 is inapplicable. In response to this argument, the trial justice stated:

> "[T]he interest statute, [G.L.1956 § 9–21–10], I believe, applies to this litigation. The reason is the clear language of the statute says, in all civil actions the statutory interest shall apply. I cannot think of any reason why because the plaintiff in the matter is the Insolvency Fund, that the statute should not apply. * * * I find, as a matter of law, * * * that the statute regarding prejudgment interest applies to companies such as Leviton who find themselves on the wrong end of a judgment brought by the Insolvency Fund to recoup payment * * *."

We disagree with the conclusion of the trial justice on this issue. This case does not represent a civil action for pecuniary damages, but rather, as Leviton suggests, is an action for reimbursement as required by statute. "Pecuniary damages" are defined as those damages that represent "not merely the loss of money * * * but all such loss, deprivation, or injury as can be made the subject of calculation and of recompense in money." *Black's Law Dictionary* 392 (6th ed.1990); *see also Sindelar v. Leguia,* 750 A.2d 967 (R.I.2000) (this Court looks to the plain meaning of the statute to determine the type of loss encompassed). Here, the Fund is not seeking damages, but merely reimbursement for payments it was statutorily required to make on Leviton's behalf, pursuant to chapter 34 of title 27 (the Insolvency Fund Act). The Fund has suffered no additional loss, deprivation, or injury, save for the

---

**5.** General Laws 1956 § 9–21–10(a) provides:
   **"Interest in civil actions.—**
   (a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."

statutorily required expenditures made on Leviton's behalf pursuant to the Insolvency Fund Act. The reimbursement that the Fund is permitted to recover is set forth in the Insolvency Fund Act, and therefore, we hold that § 9–21–10 is inapplicable to this action.

■■■ Having concluded that the pre-judgment interest statute, § 9–21–10, is inapplicable to the Fund's claim for reimbursement, we need not reach the issues relative to the application of the amended version of § 27–34–11.[6] Nor are we persuaded that Leviton, by stipulating to the rate of interest, entered into an enforceable contract for payment of pre-judgment interest to the exclusion of its right to challenge the propriety of interest in this case. We discern nothing in the record that evidences a meeting of the minds between the Fund and Leviton on the issue of whether the payment of pre-judgment interest was appropriate. The record demonstrates that Leviton agreed to the rate of interest, and did so to avoid what can be characterized as intrusive and burdensome discovery into its financial dealings. We do not consider this stipulation by Leviton to be a binding contract between the parties when it is clear that the parties have reasonably attached materially different meanings to an essential term of the agreement. *See J. Koury Steel Erectors, Inc. of Massachusetts v. San Vel Concrete Corp.*, 120 R.I. 360, 387 A.2d 694 (1978) (the formation of a contract requires a manifestation of mutual assent of the parties).

Accordingly, for the reasons stated, we vacate that portion of the judgment that awarded pre-judgment interest to the Fund.

**6.** General Laws 1956 § 27–34–11(b)(1), as amended by P.L.1999, ch. 498, § 1, provides in pertinent part: "Any insured whose net worth on December 31 of the year next preceding the date the insurer became an insolvent insurer exceeded fifty million dollars ($50,000,000) and whose liability *obligations*

## Sanctions

■■■ An award of attorneys' fees by a trial justice is subject to review for abuse of discretion. *See DiRaimo v. City of Providence*, 714 A.2d 554 (R.I.1998). In conducting such a review, the discretion exercised by the trial justice must be reviewed "in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law." *Hartman v. Carter*, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978). Appellate counsel valiantly urged that Leviton was penalized simply because it fought what the court perceived to be a losing case from the start. In addition, appellate counsel argued that such a result serves to create a "double whammy by adding a probative burden on any opposition to a motion for summary judgment" resulting in "a chilling influence on effective advocacy." However, our review of the record leads us to respectfully disagree. This case has been pending for more than six years. On numerous occasions throughout that period, trial counsel engaged in conduct designed to frustrate the Fund's right to discovery. On one such occasion trial counsel, without seeking leave of court, attempted to withdraw over fifty of Leviton's hard-fought Rule 36 admissions. Rule 36(b) states that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." In addition, this Court has always considered Rule 36 admissions to be significant evidence in a party's arsenal against an opponent. In discussing the purpose of Rule 36, we have previously stated,

"It is important that we reflect for a moment on the purpose of the rule that

*to other persons are satisfied in whole or in part by payments made under this chapter; provided, however, that there is no recovery of any prejudgment interest on any pending or future claims against this insured, including claims presently in suit or on appeal \* \* \*."* (Emphasis added.)

allows the request for admissions. Rule 36 establishes a 'procedure * * * for facilitating the proof at the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove.' * * * If the rule is to fulfill this undisputed function, the admissions provided by the rule must be considered as binding. Otherwise, a party securing an admission could not rely upon its binding effect and thereby safely avoid the expense of preparing to prove the very matter on which he has obtained the admission. The purpose of the rule is thereby defeated." *Cardi Corp. v. State*, 524 A.2d 1092, 1095 (R.I.1987).

We therefore conclude that it is wholly improper for a party, without leave of court, to make admissions and then subsequently attempt to avoid the effects of those admissions, thus prejudicing the opposing party. Such conduct violates Rule 36 and is properly sanctionable within the reasoned discretion of the trial justice. Finally, based upon the entire record before this Court, including the lengthy travel of this case, we cannot say that the trial justice abused his discretion in imposing sanctions in this case.

### Conclusion

In conclusion, we are satisfied that summary judgment in favor of the Fund was properly granted in this case. We conclude that the Pierce affidavit was wholly incompetent to support the assertion of the Fund's breach of the standard of care, and therefore, Leviton failed to establish the existence of an issue of material fact. Furthermore, we are satisfied that the trial justice acted within his discretion in the award of sanctions. We conclude, however, that the trial justice erred in finding that § 9–21–10, the pre-judgment interest statute, applied to the judgment in the case, and therefore vacate the award of pre-judgment interest on the judgment. For the reasons set forth herein, the defendant's appeal is denied in part and sustained in part. The papers in this case are remanded to the Superior Court.